**In re Sherill A. JACOBSON, Arlyss J. Jacobson, Randall Craig Jacobson, Ricky Allen Jacobson, Debtors.**

**Gary CAMERON, Trustee, Plaintiff,**

**v.**

**AMERICAN DRUGGISTS INSURANCE COMPANY, Defendant.**

**Bankruptcy Nos. BKY 3–83–573 to BKY 3–83–575.**

**Adv. No. 84–0336.**

United States Bankruptcy Court, D. Minnesota, Third Division.

Oct. 1, 1985.

Thomas D'Albani, Bemidji, Minn., for plaintiff.

John Lang, Minneapolis, Minn., for defendant.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on cross-motions for summary judgment in this preference action. No oral arguments were presented to the Court. Briefs were submitted by Thomas D'Albani on behalf of the Plaintiff, and John Lang on behalf of the Defendant. Based on the file, records, stipulation of facts, briefs and arguments of counsel, the Court makes this Order

pursuant to the Rules of Bankruptcy Procedure.

## FACTS

Cheryl, Arlys, Randall, and Ricky Allen Jacobson filed for relief under Chapter 13 of the United States Bankruptcy Code on April 4, 1983. In April 1979, three of these Debtors formed a partnership under the laws of Minnesota and did business as Jacobson & Sons Excavating, a general contractor. It was necessary that the partnership be bonded and shortly after it was formed, the partnership executed a General Indemnity Agreement with American Druggist Insurance Corporation (ADIC) covering all present and future bonds as part of a bonding agreement.

On or about September 15, 1985, Jacobson & Sons Excavating contracted with the City of Audubon, Minnesota, to construct water main extensions. In connection with that project, ADIC issued payment and performance bonds, each in the amount of $81,409.45 on or about October 5, 1981. The named principal on both bonds was Jacobson & Sons Excavating and the stipulation of facts recites that the bonds were validly executed by the partnership.

Default by the partnership under the General Indemnity Agreement, executed in 1979, constituted an assignment to ADIC of all its rights under the contract with the City of Audubon. The General Indemnity Agreement stated:

As security for the performance of all the provisions of this agreement, the Undersigned hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond or bonds, but only in the event of Default referred to in proceeding Section 4)

A. All rights in connection with any Contract, including but not limited thereto:

1. All subcontracts let in connection therewith and such subcontractors surety bonds.

2. All machinery, plant, equipment, tools which shall be upon the site or sites of the work or elsewhere for the purposes of the contracts, including all materials ordered for the contracts.

3. Any and all sums due or which may thereafter become due under said contracts and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the undersigned have an interest.

4. All rights arising out of insurance policies. Am. Druggist Ins. Co. Gen. Indemnity Agreement with Jacobson & Sons Excavating, p. 2, ¶ 6 (April 30, 1979).

Default is defined in the agreement as:

## DEFAULT

Contractor shall be in Default with respect to a Contract, and hereunder if any of the following occur:

A. Contractor breaches, abandons or repudiates any Contract.

B. Any Obligee declares Contractor to be in Default.

C. Contractor fails to pay for any labor or materials when such payment is due.

D. Contractor diverts any Contract funds from one Contract to another, prior to the complete discharge of surety.

E. Contractor, or any of the Undersigned, breaches any provision of this Agreement.

F. Contractor, or any one of the Undersigned, becomes the subject of any Agreement or proceedings of composition, insolvency, bankruptcy, receivership, trusteeship, or assignment for creditors.

G. Contractor, or any one of the Undersigned, becomes actually insolvent.

H. Contractor, if an individual, dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from justice or disappears and cannot be located with usual methods. Am. Druggist Ins. Co. Gen. Indemnity Agreement with Jacobson & Sons Excavating, p. 1, ¶ 4 (April 30, 1979).

Also contained in the General Indemnity Agreement is paragraph 7 granting ADIC power of attorney over the partnership for

any rights assigned through the operation of paragraph 6.

Sometime prior to August 27, 1982, both the City of Audubon and certain subcontractors of Jacobson & Sons Excavating made claims against the bonds covering the project due to failure by Jacobson & Sons Excavating to pay for work performed and for non-performance of work. ADIC, in turn, declared a default under the General Indemnity Agreement and claimed the balance due the partnership from the City for the project. ADIC ultimately received $9,367.80 from Audubon, which was the balance owing on the contract. This payment was made within 90 days of the filing of the petition.

The trustee contends that the payment to ADIC was a preferential transfer avoidable under 11 U.S.C. § 547.

ADIC argues: (1) that Debtors had no property interest in the fund at the time of the transfer; (2) if a transfer of the Debtors' property did occur, that the transfer was at the time the assignment became effective in August 1982 which is outside the 90-day preference period; (3) that the Debtors were solvent at the time of the transfer; and (4) that ADIC held a perfected security interest in the fund pursuant to MINN.STAT. § 336.9–302.

## DISCUSSION

A bankruptcy trustee is granted certain powers to avoid specific types of transactions. One such avoiding power is contained in 11 U.S.C. § 547(b). The section reads in pertinent part:

Except as provided in subsection (c) of this section, the trustee may avoid any *transfer of an interest* of the debtor in the property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) *on or within 90 days before the date of the filing of the petition*; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b) (1979 and Supp.1984) (emphasis added)

The Trustee has the burden to prove each of the enumerated elements other than insolvency. *See* 11 U.S.C. § 547(f) and (g).

■ A necessary element of a preferential transfer is that it involve a transfer of an interest of the debtor. All of the bonds, contracts and the stipulation of facts, show that the transactions sought to be avoided were actually between ADIC, the City of Audubon and Jacobson & Sons Excavating, a partnership. The partnership did not file for relief and its assets, including the contract rights, cannot be made property of these bankruptcy estates. Accordingly, transfer from Jacobson & Sons Excavating cannot be a preferential transfer avoidable by the trustee.

■ Aside from that, the transfer for purposes of § 547 occurred when the contract rights were assigned under the General Indemnity Agreement, not when ADIC was paid by Audubon. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). The contract rights were assigned upon the partnership's default in August of 1982, outside the 90-day preference period.[1]

---

1. The Debtors argue, by letter dated August 26, 1985, that the stipulation of facts does not specifically state a default occurred. However, the stipulation does contain facts sufficient for the Court to find a default occurred by at least August 1982. The General Indemnity Agree-

For the above reasons:

**IT IS ORDERED** that American Druggists Insurance Company is entitled to summary judgment in this preference action. No preferential transfer occurred.

**Let Judgment Be Entered Accordingly.**

ment defined default as anytime an obligee makes a claim on the bond. The trustee admits that both the City of Audubon and several subcontractors made claims on the bond. It is also admitted that ADIC exercised its rights under the General Indemnity Agreement by contacting the City and asserting its rights to the contract proceeds.