In re ADVENTIST LIVING CENTERS, INC., Debtor.

FIRST TRUST NATIONAL ASSOCIATION, as Bondholder Liquidating Trustee of Liquidating Trust C Under the Second Amended Plan of Reorganization of Adventist Living Centers, Inc., Plaintiff,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, in its capacity as Trustee under Trust Agreement No. 100895–07 and Belleville Associates, Ltd., a partnership, Defendants.

Bankruptcy Nos. 92 B 21285, 92 A 1494.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 1, 1994.

See also, 171 B.R. 310.

508

Mark E. Leipold, Oppenheimer Wolff & Donnelly, Chicago, IL, for plaintiff.

Synde B. Keywell, Katten Muchin & Zavis, Chicago, IL, for defendants.

### *MEMORANDUM OPINION*

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

### BACKGROUND

Adventist Living Centers, Inc. ("Debtor") leased a nursing home facility located in

Belleville, Illinois known as Notre Dame Hills Convalescent Center ("Notre Dame") from Belleville Associates, Ltd. pursuant to a ten-year lease commencing on January 1, 1987 (the "Lease"). Belleville Associates, Ltd. was the owner of the real property on which Notre Dame was located, and a beneficiary under Trust No. 100985–07. The legal titleholder of that property was American National Bank and Trust Co. (collectively referred to as "Landlord"). The Lease required the Debtor to make monthly payments to the Landlord. Debtor tendered $100,000 to the Landlord to be held as a security deposit pursuant to the terms of the Lease. On June 19, 1990, the Debtor and Landlord entered into an agreement to modify the Lease ("June Agreement"). The Lease, as modified by the June Agreement, provided that the Landlord was not entitled to damages until the Lease was terminated.

On August 31, 1990, the Debtor's liabilities exceeded its assets by $4,766,134. As of that date, the Debtor owed the Landlord $315,921[1] for unpaid rent and other obligations due under the Lease. Further on that date, Debtor owned outstanding accounts receivable attributable to Notre Dame. On August 31, 1990, Debtor and Landlord entered into an agreement whereby the Lease, as modified by the June Agreement, was terminated ("Agreement"). Paragraph 1 of the Agreement provides:

(a) [Debtor] shall be deemed to have sold, assigned and transferred to the Landlord all right, title and interest of [Debtor] in and to (i) all personal property of [Debtor] located at the facility, (ii) all contracts, leases and other agreements to which [Debtor] is a party insofar as they relate to the business and operations of the Facility ... and (iii) all trade accounts receivable arising out of the business and operations of the Facility which have not been collected, other than the first $51,700 of such trade accounts receivable that are collected after such time, (b) the Landlord shall be deemed to have accepted such sale, assignment and transfer and to have assumed all such contracts, leases and other agree-ments, and (c) the Landlord shall cause the Facility to be operated by a duly licensed operator.

Paragraph 9 of the Agreement provides:

Landlord hereby releases, acquits and discharges [the Debtor] ... from all claims, counterclaims, liabilities, causes of action, suits, debts, damages, judgments and demands which the Landlord had, has or may have against [the Debtor] arising out of or related to the Lease, the Facility and all transactions, agreements, negotiations, representations, facts or circumstances relating to the Lease or the Facility.

Also according to Paragraph 2 of the Agreement, the Debtor assigned its interest in the $100,000 security deposit to the Landlord and pursuant to Paragraph 7 the Debtor agreed to pay the Landlord $266,700 on or before September 1, 1992.

The Landlord operated Notre Dame from September 1, 1990 until June 30, 1992. During this time period, Landlord experienced $235,148 in losses. Pursuant to Paragraph 1 of the Agreement, the Landlord collected accounts receivable in the amount of $260,821.

On November 14, 1990, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. At the time the Debtor's petition was filed, secured claims against the Debtor exceeded the amount of the Debtors' assets by $2,000,000. On April 29, 1992, this Court entered an order confirming the Debtor's Second Amended Plan of Reorganization ("Plan") which created the ALC Liquidating Estate. Among the assets of the estate were preference actions which pursuant to the Plan, the Trustee has the right to pursue. On November 13, 1992, the Trustee filed a complaint alleging that the transfer of the accounts receivable and the security deposit pursuant to the Agreement were preferential and fraudulent transfers which should be avoided. The Trustee filed a motion for partial summary judgment contending that there is no issue of material fact which precludes the

---

**1.** The Court notes that the Landlord stipulated to this amount for summary judgment purposes only.

Court from finding the transfer of the accounts receivable to the Landlord constituted a preferential transfer as a matter of law. The Landlord filed a cross-motion for partial summary judgment in its favor on the same issue. Further, the Landlord contends that summary judgment should be entered in its favor on the issue of whether the transfer of the accounts receivable constituted a fraudulent conveyance.

## STANDARD

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Donald v. Polk County*, 836 F.2d 376, 378–79 (7th Cir.1988).

In 1986, the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n*, 806 F.2d 146, 149 (7th Cir.1986)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct.

at 2514; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. There is no genuine issue for trial, unless there is sufficient evidence favoring the nonmoving party for a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County*, 901 F.2d 561, 564–66 (7th Cir.1990). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *In re Calisoff*, 92 B.R. 346, 350–51 (Bankr.N.D.Ill.1988). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County*, 836 F.2d at 379; *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Rule 12[2] of the General Rules of the United States District Court for the Northern

---

2. Rule 12 was in effect at the time that this matter came under advisement. The Court notes

District of Illinois adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. Rule 12 also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12 statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted. In the present proceeding, both parties filed a statement of facts.

After considering the pleadings, papers submitted by the parties, and arguments of counsel, the Court denies both motions for summary judgment on the issue of whether a preferential transfer occurred. The Court currently does not have before it certain evidence which is critical to ascertain whether a preference in fact occurred. However, the Court finds that:

—a transfer of an interest of the Debtor in property occurred;

—the transfer was to or for the benefit of a creditor;

—the transfer was for or on account of an antecedent debt;

—the transfer was made while the Debtor was insolvent;

—the transfer was made within 90 days of the filing of the petition.

Further, the Court finds that as a matter of law the transfer of the accounts receivable to the Landlord was not fraudulent. Therefore, on that issue the Court enters summary judgment in favor of the Landlord.

### DISCUSSION

*Preferential Transfer*

■ Section 547 allows a trustee to recover certain transfers made by a Debtor pre-

petition.[3] The essential elements of a preferential transfer are:

(1) a transfer of an interest of the debtor in property;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt;

(4) made while the debtor was insolvent;

(5) made within 90 days of the filing of the petition or between ninety days and one year if the transferee was an "insider"; and

(6) that enables such creditor to receive more than the creditor would otherwise receive in a liquidation case.

11 U.S.C. § 547(b). The Trustee has the burden of proving the avoidability of a preferential transfer. 11 U.S.C. § 547(g). The Landlord does not contest that the Debtor's assignment of its accounts receivable constituted a "parting with" or a "transfer" of an interest of the Debtor in property. *See* 11 U.S.C. § 101(58)[54]. Further, the Landlord does not dispute that the accounts receivable were transferred "to or for the benefit" of the Landlord.

■ The issues of insolvency and whether a preference was made within 90 days of the filing of the Debtor's bankruptcy petition are not in serious dispute. The relevant date to determine insolvency is the date of the transfer. *In re Camp Rockhill, Inc.*, 12 B.R. 829, 833 (Bankr.E.D.Pa.1981). In order to establish that a Debtor was insolvent, courts generally use a balance sheet test. *Matter of Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir.1988). On August 31, 1990, the date of the transfer, the Debtor's liabilities exceeded its assets by $4,766,134.32. Therefore, the Court finds that the Debtor was insolvent.

■ Turning to the question of whether the accounts receivable were transferred

---

that subsequent thereto, the General Order of the Bankruptcy Court of May 6, 1986 was rescinded, in order to effectuate a new set of Local Bankruptcy Rules. Although no substantial change in the local rules have been made to effect the parties respective motions, the Court cites and

adheres to the rules which were in effect at the time of the briefing of this matter.

**3.** All statutory references are to 11 U.S.C. §§ 101–1330.

within 90 days of the filing of the Debtor's bankruptcy petition, the Court finds that they were. The Landlord does not contest that the transfer was made within 90 days of the petition date in any papers filed pursuant to the Trustee's motion for summary judgment or the Landlord's cross-motion for summary judgment. The Landlord did raise the issue in response to interrogatories served by the Trustee. The Landlord contended that since the Landlord did not collect the accounts receivable within the ninety day preference period, a transfer within the preference period was not effectuated. For purposes of Section 547(b)(4), a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected. *In re Jacobson*, 54 B.R. 72, 74 (Bankr.D.Minn.1985); *see also In re Northwest Elec. Co. of Ohio*, 84 B.R. 400 (Bankr.W.D.Pa.1988). Therefore, the Court will not look to the time the Landlord collected on the accounts receivable, rather the Court will look to the date of the assignment of the accounts receivable. The Agreement provides that the accounts receivable were assigned on September 1, 1990. Since the Debtor's bankruptcy petition was filed on November 14, 1990, the accounts receivable were transferred 74 days before the petition date. Therefore, the Court finds a transfer was made within the 90 day period immediately proceeding the filing of the bankruptcy petition.

### Antecedent Debt

■ The only two elements which the Landlord contends the Trustee has not proven pursuant to Section 547(b) are whether the transfer to the Landlord was made on account of an antecedent debt, and whether the Landlord received more than it would have in a Chapter 7 case. In order for a transfer to be avoided pursuant to Section 547, the transfer must have been made on account of an antecedent debt. The Trustee contends that since there is no factual dispute that the Debtor owed the Landlord $315,921 for unpaid rent, pursuant to the Agreement the accounts receivable were clearly transferred on account of that antecedent debt. The Landlord argues that since Paragraph 9 of the Agreement does not men-

tion or refer to the Landlord's release of its past due rent claims, the receipt of the accounts receivable was not conditioned upon those claims. Rather, the Landlord contends that Paragraph 1 explicitly provides that the Debtor's assignment of its accounts receivable were in exchange for the Landlord's assumption of future liabilities incurred by the Landlord. Therefore, according to the Landlord, the assignment of the accounts receivable were not on account of an antecedent debt but were on account of liabilities to be incurred in the future.

The Landlord's interpretation of the Agreement is not consistent with the plain language of the Agreement. Paragraph 1 provides that the Debtor shall be deemed to have "sold, assigned, and transferred" to the Landlord: (1) all personal property located in the facility; (2) all contracts, leases, and other agreements to which the Debtor was a party; and (3) all trade accounts receivable which have not been collected other than the first $51,700 of the accounts receivable. Further, pursuant to paragraph 1, the Landlord shall be deemed to have accepted such "sale, assignment and transfer to assume all such contracts, leases, and other agreements." Paragraph 1 does not state that the Landlord agreed to the transfer of the Debtor's accounts receivable in exchange for the Landlord's agreement to "assume the liabilities" of the Debtor. Rather, Paragraph 1 outlines the property interests of the Debtor which it was selling, assigning or transferring to the Landlord. Some of that property was the Debtor's interest in the accounts receivable and in the personal property, as well as certain contracts, leases, contracts, leases, and agreements that may ultimately have been unprofitable. The Agreement does not provide for the Debtor's assignment of the accounts receivable solely in exchange for the Landlord's release of the Debtor's lease arrearage.

■ Moreover, the Court must look at the Agreement as an integrated whole. *Medcom Holding Co. v. Baxter Travenol Lab. Inc.*, 984 F.2d 223, 226 (7th Cir.1993); *Grevas v. U.S. Fidelity & Guar. Co.*, 152 Ill.2d 407, 178 Ill.Dec. 419, 604 N.E.2d 942, 944 (1992). "[T]he intent of the parties to a

contract must be determined with reference to the contract as a whole, not merely to the particular words or isolated phrases, but by viewing each part in light of the others." *La Throp v. Bell Federal Savings & Loan Assoc.*, 68 Ill.2d 375, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977) *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978) (citations omitted). Contracts must be construed "so that each provision or clause is given full force and effect and so that the terms make sense when read together." *Medcom Holding*, 984 F.2d at 226. Paragraph 9 states that the Landlord releases the Debtor from all claims arising out of the Lease. When the Agreement is construed according to these principles, the transfers and assignments of the Debtor's contract and agreements in paragraph 1 were clearly made in exchange for the provisions in Paragraph 9. If the Court accepted the Landlord's argument, it would have the effect of deleting the consideration given by the Debtor to the Landlord pursuant to Paragraph 9 of the Agreement.

■ The Court will not ignore the contractual provisions of parties who negotiated at arms length. Although part of the consideration for the transfer of the accounts receivable may have been the Landlord's agreement to assume control of Notre Dame, that consideration was not exclusive. According to the plain language of the Agreement, part of the Landlord's consideration to the Debtor for the transfer of the accounts receivable was the release of the Debtor's debt for the Lease arrearage. Section 547 does not require that the transfer of the Debtor's property be exclusively for antecedent debt. Rather, Section 547(b) states that a transfer must be made "for *or on account of* an antecedent debt." (emphasis added).

■ In support of its position, the Landlord submitted the affidavit of Joseph A. Rosin, the sole shareholder and President of Associated Healthcare, Inc., which is a general partner of Belleville Associates, Ltd., the beneficial owner of the real property on which Notre Dame is located. Mr. Rosin stated that:

The parties to the Termination Agreement never intended for the Receivables to serve as consideration for Landlord's release of Debtor's obligations under the Agreement that were due and payable on or before August 31, 1990.

The Trustee urges the court to disregard such statements because they contradict the plain language of the Agreement. When the parol evidence rule is an issue in a bankruptcy case, the court must apply the law of the state in which it sits in order to resolve whether the rule should be applied. *In re Morris Paint & Varnish Co.*, 773 F.2d 130 (7th Cir.1985). In citing Illinois law, the Defendants correctly argue that pursuant to the parol evidence rule, evidence which contradicts the terms of a valid integrated unambiguous document is barred. Since this statement contradicts the express and unambiguous terms of the Agreement, the Court will not consider it. *Heckman v. Mid States Dev. Co.*, 60 Ill.App.2d 113, 207 N.E.2d 715, 718 (1965).

The Landlord also submitted the affidavit of Raymond Tutwiler, President of the Debtor at the time of the execution of the Agreement. Both Tutwiler and Rosin attested that the Debtor's nursing home was unprofitable. Further, both stated that pursuant to the Agreement, the accounts receivable were consideration for the Landlord's assumption of the Debtor's future liabilities which would have been incurred in connection with operating Notre Dame. The Court does not find these statements support the Landlord's argument. As stated previously, although part of the consideration for the transfer of the accounts receivable may have been the Landlord's agreement to assume certain contracts, part of the consideration was the release of the Debtor's liability to the Landlord in the amount of $315,921. Therefore, the Court rejects the Landlord's argument that the transfer of the accounts receivable were not on account of an antecedent debt, but rather were on account of debt to be incurred in the future.

■ Next, the Landlord argues that no antecedent debt arose because according to the Lease as modified by the June Agreement, damages only accrued upon termination. According to the Landlord, the

Lease could only be terminated after (i) the Landlord sent the Debtor a written notice that the Debtor was in default, and (ii) the Debtor failed to cure this default within ten days of receiving the notice. According to the Landlord, since the Landlord did not send a written notice of default, the Lease was not considered terminated when the Debtor defaulted month after month on their lease obligations. The Landlord argues that termination did occur on September 1, 1990, when the Agreement was executed. Therefore, according to the Landlord, since the damages accrued when the Agreement was executed, and the transfer of accounts receivable was effectuated at that same time, at most there was a contemporaneous exchange, not an exchange for the Debtor's antecedent debt.

The Court does not agree. The Landlord's argument focuses on when the Landlord was able to seek legal redress for the lease arrearage, not when a "debt" in favor of the Landlord actually arose. "Debt" is defined as a liability on a claim. 11 U.S.C. § 101(12). "Claim" is defined in the Code as:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured

11 U.S.C. § 101(5)(A). Therefore, "claim" is defined to include all equitable and legal obligations of the Debtor, no matter how remote or contingent. Congress therefore gave debt, the same broad meaning as claim. *In re Energy Co-op. Inc.*, 832 F.2d 997 (7th Cir.1987).

Both parties cite the Seventh Circuit case *In re Energy Co-op. Inc.* in support of their respective arguments. In *Energy Co-op.*, the Seventh Circuit Court of Appeals held that the buyer's repudiation of a purchase agreement gave rise to a "claim." 832 F.2d at 1002. Specifically, the Court said:

> [The buyer's] repudiation constituted a breach of the contract ... and [the seller] had a right to pursue damages (that is, payment) for that breach. When [the buyer] breached the contract with the [seller], [the seller] acquired a claim against [the

buyer]; therefore, [the buyer] incurred a debt to [the seller].

*Id.* The Seventh Circuit's holding that a claim arose when a contract was breached, does not give credence to the Landlord's argument that a claim arose in favor of the Landlord only when the Landlord complied with the lease termination provisions. The Court specifically noted the broad definitions of the terms "debt" and "claim" in the Bankruptcy Code. The Court did not enunciate a bright-line rule for when a claim arises, but rather pinpointed the time when the "claim" arose pursuant to the facts before it. In *Energy Co-op.*, the facts presented were more than sufficient to determine that the buyer had a "claim", and consequently that the seller had an antecedent debt.

In a case decided after *Energy Co-op.*, the Seventh Circuit specifically rejected the Landlord's argument. *Stamp v. Insurance Company of North America*, 908 F.2d 1375 (7th Cir.1990). In *Stamp*, the Court of Appeals analyzed a preferential transfer in the context of a liquidation of an insurance company. Similar to bankruptcy law, preferential transfers may be recovered by the liquidator of insolvent insurers pursuant to Illinois law. In *Stamp*, the liquidator alleged certain premiums transferred to various reinsurers and managers of reinsurance pools were preferential transfers. 908 F.2d at 1376. The defendants argued that no debt had arisen because the insurer did not owe the unearned premium since the policy had not been canceled and no casualty had occurred. *Id.* at 1382. The Seventh Circuit rejected the reinsurer's argument. *Id.* The Court of Appeals noted that an insured may cancel the insurance policy and demand that the insurer return the premium prepaid for days of unused future coverage:

> [e]ven though the insurer does not owe money to the insured until a casualty occurs or the insured cancels the policy, a contingent liability is enough to make unearned premiums "debts" under the 1978 [Bankruptcy] Code. See 11 U.S.C. § 101(11), defining a debt as liability on a "claim", and § 101(4)(A), defining a "claim" as any right to payment, whether or not contingent or liquidated. A policyholder

has a "claim" against an insurer for unearned premiums, which are therefore the insurer's "debts". *See also, e.g., Pennsylvania Department of Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1190 (7th Cir.1989); *In re Energy Cooperative, Inc.,* 832 F.2d 997, 1001 (7th Cir.1987), discussing the broad meaning of claim and debt under the 1978 Code.

*Id.* The Court stated that a policyholder has a claim against an insurer, and the policyholder has a debt against the insurer for unearned premiums, whether or not the claim is contingent or liquidated. *Id.* The Seventh Circuit compared the situation to the fact that an amount due on a demand note is still a debt even though demand has not been made. *Id.* Therefore, the Seventh Circuit considered and rejected the Landlord's argument that a debt is created only when damages arise pursuant to the language of a contract. Even if an obligation is unmatured and contingent, it "does not make the obligation less a debt." *Id.; see In re Gold Coast Seed Co.,* 751 F.2d 1118, 1119 (9th Cir.1985) (Seller acquired a "claim" against the buyer at the time the buyer received and accepted the goods); *In re Western World Funding, Inc.,* 54 B.R. 470, 480 (Bankr. D.Nev.1985) (An obligation to repay a loan or investment is incurred when the debtor received the funds).

■ In this case, a debt arose on the part of the Debtor when the lease payments fell due. Conversely, the Landlord had a right to payment and had a claim for each month's obligation on the date each payment fell due. *In re Durant's Rental Center, Inc.,* 116 B.R. 362, 366 (Bankr.D.Conn.1990); *cf. In re Upstairs Gallery, Inc.,* 167 B.R. 915 (9th Cir. BAP 1994) (Payment by Debtor/lessee under lease termination agreement was transfer on account of antecedent debt because debt

arose on date lease was executed which was prior to termination agreement). Under the express terms of the Bankruptcy Code, the Landlord's right to payment was a claim against the Debtor, and the Debtor's liability to the Landlord for the amount of the Landlord's claim was a debt. The Debtor's liability for the lease payments arose prior to the transfer of the accounts receivable, and was therefore chronologically antecedent. Consequently, the Court finds that in this case, the accounts receivable were transferred on account of an antecedent debt.[4]

### Preferential Effect

■ Pursuant to Section 547(b)(5), a trustee may only avoid a transfer of an interest of the Debtor in property:

that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5). The Trustee must prove that the Landlord received a greater percentage of its claim against the Debtor than it would have received if the transfer had not been made and the Debtor had been liquidated under Chapter 7. *In re LCO Enterprises,* 12 F.3d 938, 941 (9th Cir.1993). In order to accurately determine whether the creditor received more than it would have in a Chapter 7, the Court must construct a hypothetical chapter 7 case and determine what the creditor would have received if this particular case proceeded under chapter 7. *Id.* In construing the preference provision of the former Bankruptcy Act, the Supreme Court observed that the preferential effect of the payment must be determined:

4. Further, the Landlord's position is severely undermined by the arguments made pursuant to Section 547(b)(5). Pursuant to Section 547(b)(2), the Landlord contends that no preference occurred because no antecedent debt arose due to the Landlord's failure to terminate the contract. However, pursuant to Section 547(b)(5), the Landlord argues that in a Chapter 7 case, it would have had a claim for prepetition

rent if the Agreement was not executed. As noted, the terms 'claim' and 'debt' are coextensive. Once the creditor has a 'claim' against the debtor, the debtor owes a 'debt' to the creditor. *Energy Co-op.,* 832 F.2d at 1001. Therefore, if the Landlord would have had a claim in a Chapter 7 case for pre-petition lease arrearage, a debt must have arisen.

not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results.

*Id.* at 942 *citing Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655 (1936).

The Trustee contends that unsecured creditors would not receive any payment in a Chapter 7 case because the Debtor's disclosure statement indicates that the secured claims against the Debtor exceeded the Debtor's assets by approximately $2 million. Therefore, if a Chapter 7 case were filed and the transfer of the accounts receivable had not occurred, the Landlord would receive nothing since the Landlord is an unsecured creditor. Instead, the Trustee contends that the transfer of the accounts receivable allowed the Landlord to receive more.

■■■ There are a few holes in the Trustee's analysis. The Trustee did not submit any evidence supporting his contention that the unsecured creditors would receive nothing. Although the Trustee cites to the disclosure statement, simply because secured claims are greater than the Debtor's assets does not mean unsecured creditors would receive no payment in a Chapter 7 case. The Trustee does not allege or support by way of pleadings, depositions, affidavits, or any other materials that security interests were held in all of the assets of the Debtor. Moreover, if there were unencumbered assets at the time of filing the bankruptcy petition, presumably they would have been sold in a Chapter 7 case for the benefit of unsecured creditors. A material issue of fact exists as to whether the Landlord would have received more in a Chapter 7 case if the transfer had not been made and the creditor received payment on the debt. The Court must deny the Trustee's motion for summary judgment.

In support of its cross-motion for summary judgement, the Landlord argues that there was no preferential effect upon the transfer of the accounts receivable because the Landlord would have received more in a Chapter 7 case. The Landlord argues that if the Agreement was not executed, the accounts receivable were not transferred, and the Debtor was liquidated in a chapter 7, the Landlord would have an unsecured claim of $100,000 for prepetition rent and an administrative claim in the amount of $480,000 for postpetition rent based on one year.[5] Further, the Landlord contends that it saved the estate administrative expense claims of $130,000 due to the Landlord's assumption of liabilities. As a result of the Agreement, Landlord argues that it only has accounts receivable which value approximately $230,000.[6] Therefore, according to the Landlord, the Debtor's estate was enhanced due to the execution of the Agreement.

■■■ The problem is that the Landlord is comparing apples with oranges. Although the Landlord may well have had "claims" totalling $580,000 ($100,000 claim for prepetition rent plus $480,000 administrative claim for postpetition rent) in a hypothetical Chapter 7, the relevant inquiry is whether the Landlord would have received more in the event of "payment" on these claims. In applying Section 547(b)(5), it seems the Landlord would have had claims for prepetition rent. Further, it is clear that administrative expenses would have been incurred in this case if the Debtor had filed Chapter 7 instead of 11. *LCO Enterprises,* 12 F.3d at 942. In such a scenario, Notre Dame could not have simply shut its doors upon the date the petition was filed. Pursuant to Illinois law, the Debtor must give at least 90 days notice before a nursing home may be closed down. 210 ILCS 45/3–423; *see also* 77 Ill.Admin.Code Ch. II, §§ 1110.120, 1110.130. Further, nursing home operators may not close their homes at the end of the statutory 90 day notice period if the residents have not been safely and lawfully transferred or discharged. *See* 210 ILCS 45/3–401 *et seq.* Therefore, clearly administrative expenses in

**5.** This time period is based on the Landlord's assumption that Debtor took approximately one year to make arrangements to release itself of its obligations to operate Notre Dame.

**6.** The Landlord contends that the receivables were offset by Landlord's actual losses of approximately $235,000, but does not cite any authority to support such a conclusion.

the form of postpetition rent would have been incurred in a Chapter 7 case. However, simply because the Landlord may have had claims in a Chapter 7 case certainly does not mean it would have received payment of the full amount of those claims in a distribution. It is unclear whether administrative claims would have been paid in full or on a pro-rata basis with other administrative claim in the event of a Chapter 7. Further, the Landlord has not provided any evidence to aid the Court in such a determination. Therefore, summary judgment in favor of the Landlord is not appropriate on the issue of the preferential effect of the transfer.

 Although the Court cannot grant summary judgment to either party on the issue of whether a preference occurred upon the transfer of the accounts receivable, the Court will address the Landlord's two remaining arguments. First, the Landlord argues that in a hypothetical Chapter 7, Debtor would have to operate the nursing home for 90 days pursuant to Illinois law. Therefore, since the Debtor would have incurred substantial losses, the Landlord benefitted the estate by assuming liabilities in the amount of $130,000. The Landlord's argument is without merit. Section 547(b)(5) specifically instructs the Court to examine whether a *creditor* received more than the creditor would receive if the transfer had not occurred and a Chapter 7 case was filed. What the Debtor received as a result of the transfer and how the Debtor's estate is benefitted is irrelevant. Second, the Landlord argues that as a result of the Agreement, it waived any right to file a claim for prepetition rent. Section 502(h) of the Bankruptcy Code provides that the claim of a creditor arising from the recovery of property under Section 550 shall be allowed or disallowed the same as if the claim had arisen prepetition. Therefore, the Landlord did not waive its right to prepetition rent; if after a trial on the merits, the Court finds a preference occurred, the Landlord will have a general unsecured claim for unpaid prepetition rent.

### Fraudulent Transfer

 The Landlord moves for summary judgment contending the transfer of accounts

receivable was not a fraudulent conveyance pursuant to Section 548(a)(2) because reasonably equivalent value was given for the transfer. The term "reasonably equivalent value" is not defined in the Code. However, for purposes of Section 548, "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor". In determining whether the Debtor received reasonably equivalent value, the Court must focus on what the debtor received in return for what he surrendered. *See Damason Const. Corp.*, 101 B.R. 775, 778 (Bankr. M.D.Fla.1989) ("the focus is limited solely to the value of the property or services given to the debtor in exchange for the transfer").

 There is no dispute that at the time of the transfer of the accounts receivable to the Landlord, the Debtor owed the Landlord $315,921 for the unpaid rent. Further, the Court has found that the transfer in question, the release of the Landlord's claims in exchange for the accounts receivable, satisfied an antecedent debt of the Debtor. The antecedent debt of the Debtor in the amount of $315,921 certainly constituted value. *In re Vinzant*, 108 B.R. 752, 759 (Bankr.D.Kan. 1989) (Release of lien worth $411,447.88 which was transferred to satisfy an antecedent debt constituted value). In exchange for the Landlord releasing the Debtor's liability in the amount of $315,921, and arguably assuming certain liabilities of the Debtor, the Debtor transferred its accounts receivable to the Landlord in the approximate amount of $260,821 in assets and the security deposit of $100,000.[7] Considering all the circumstances surrounding the transfer, reasonable minds would agree, there was a fair exchange given all the circumstances surrounding the transfer. *Matter of Wey*, 854 F.2d 196 (7th Cir. 1988) (Forgiveness of debtor's $4.6 million dollar debt by Debtor's transfer of $520,000 down payment was reasonably equivalent value). Therefore, the Court finds that the Landlord provided reasonably equivalent value to the Debtor as a matter of law for the transfer of the accounts receivable. Consequently, the Court enters summary judgment

---

**7.** The Court notes that the Debtor agreed to pay the Landlord $266,700 on or before September

11, 1992. Given the bankruptcy filing, the Court doubts that amount was ever paid.

**518**

in favor of the Landlord on the issue of whether a fraudulent transfer occurred.

### CONCLUSION

The Court denies the Trustee's partial motion for Summary Judgment, and denies in part and grants in part the Landlord's cross-motion for partial summary judgment. Since the Court has not found as a matter of law that a preferential transfer occurred it would be inappropriate at this juncture to address the affirmative defenses raised by the Landlord. The Court denies the Landlord's request for summary judgment on the issue of whether a preferential transfer occurred. The Court grants summary judgment in the Landlord's favor on the issue of whether a fraudulent conveyance occurred upon the transfer of the accounts receivable. The sole issue to be heard by the Court at trial concerning the avoidance of the transfer of the accounts receivable is the preferential effect pursuant to Section 547(b)(5). Further, the affirmative defenses which have been properly raised by the Landlord may be litigated. By order entered separately this day, the Court will set a status date of November 23, 1994 at 10:30 a.m.