**In re Bonnie Lynn WELCH, Debtor.**

**Mark H. Shapiro, Trustee, Plaintiff,**

**v.**

**US Claims, Inc., Defendant.**

**Bankruptcy No. 12–58561.**
**Adversary No. 13–4972.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Signed April 28, 2014.

Lauren Schumacher Oriani, Southfield, MI, for Plaintiff.

Scott Kwiatkowski, Southfield, MI, for Defendant.

*ORDER GRANTING U.S. CLAIMS, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT*

MARK A. RANDON, Bankruptcy Judge.

## I. INTRODUCTION

US Claims, Inc. ("USC") advances money to individuals with legal claims likely to have favorable outcomes. If a claim is successful, USC is repaid its advance—plus a significant pre-negotiated return on its investment; nothing is owed, if the claim is dismissed or money is not recovered. The arrangement is accomplished through a Purchase Agreement: USC buys an interest in some or all of the anticipated claim proceeds, to be repaid from any final verdict, award or settlement of the claim.

Two years before filing her voluntary Chapter 7 bankruptcy petition, and in need of cash now, Bonnie Lynn Welch sold USC a portion of her anticipated workers' compensation claim ("WC") proceeds. Welch's WC claim settled—and USC received payment on its interest—one month before her bankruptcy filing.

In this adversary proceeding, Mark H. Shapiro, the Chapter 7 Trustee for Welch's bankruptcy estate, seeks to avoid the transfer of proceeds to USC as preferential. In general, among other requirements, a preference must occur within 90 days before the filing of the bankruptcy petition to be avoided.

USC's motion for summary judgment is pending. The Trustee responded and filed a cross-motion for summary judgment; the Court heard oral argument on April 17, 2014. Because Welch irrevocably sold a portion of her anticipated WC proceeds two years before her bankruptcy petition was filed, the transfer of her interest did not fall within the 90 day preference period. Therefore, USC's motion for summary judgment is **GRANTED**, and the Trustee's motion for summary judgment is **DENIED**.

## II. BACKGROUND

On September 14, 2010, Welch and USC entered into a Purchase Agreement:

Welch sold, transferred, conveyed, and assigned to USC a $5,953.00 interest in her anticipated WC claim proceeds in exchange for an immediate payment of $5,000.00. The Purchase Agreement also provided that USC would receive a rate of return on its purchased interest of 35.4% compounded monthly. If Welch was not successful on her WC claim, she would owe USC nothing.

Twenty-two months later, in July of 2012, Welch settled her WC claim and, pursuant to the Purchase Agreement, her WC attorney sent USC a check for $10,046.00 (the purchase price plus the accrued rate of return). Welch filed her bankruptcy petition on August 10, 2012.

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Servs.*, 640 F.3d 716, 723 (6th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir.2011). However, the non-moving party may not rely on mere allegations or denials, but must "cit[e] to particu-

lar parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Rule 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir.2011).

## IV. ANALYSIS

11 U.S.C. § 547(b) allows the Trustee to avoid any transfer of an interest of the debtor in property, if all five of the following conditions are met:

(1) the transfer was made to or for the benefit of a creditor;

(2) for or on account of an antecedent debt incurred before the transfer was made;

(3) made while the debtor was insolvent;

(4) within 90 days before the date of the filing of the petition; and,

(5) that enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7 of this title, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of this title.

USC disputes that the transfer was preferential on the first, second and fourth conditions. But, the Court's inquiry turns on the date that Welch transferred a portion of her interest in the anticipated WC claim proceeds: was it on the date she signed the Purchase Agreement—two years before her bankruptcy filing? Or, as the Trustee argues, was it on the date her WC attorney actually paid USC—one month before her bankruptcy filing? The answer depends on whether Welch conveyed a security interest in the anticipated WC proceeds, or irrevocably sold USC a portion of those proceeds. A security interest does not necessarily transfer owner-

ship. However, an absolute assignment permanently transfers all rights to the assignee on the date the agreement is signed. *In re Gibraltar Resources, Inc.*, 202 B.R. 586, 588 (N.D.Tex.1996) (citations omitted) ("[w]hen a debtor makes an absolute assignment to a creditor, of money that the debtor is entitled to receive from a third party, a transfer is perfected and complete when the assignment is executed rather than when the money is disbursed to the creditor"); *In re Adventist Living Centers, Inc.*, 174 B.R. 505, 512 (Bkrtcy. N.D.Ill.1994) ("[f]or purposes of Section 547(b)(4), a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected") (citations omitted).

■■■ The Court must review the entire Purchase Agreement to determine whether the transaction was an absolute assignment. *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 266 (6th Cir.1979) ("The scope of an assignment is gathered from the instrument as a whole and no single clause is dispositive."). Having reviewed the entire Purchase Agreement, the Court finds as a matter of law that Welch made an absolute assignment of a portion of her interest in the WC proceeds.[1] The express language of the Purchase Agreement and Exhibit A support this finding:

(1) [Welch] desire[s] to sell and assign to USC an Interest in the Proceeds [and] USC desires to purchase the Interest.

(2) [Welch agrees to] sell, transfer, convey and assign to USC a $5,953 interest in the Proceeds.

(3) USC's Interest will be paid by [Welch's] Attorney out of the Proceeds of [her] Claim and will be deducted directly from the Proceeds of [her] Claim and will be paid to USC prior to any payment to [her] with respect to [her] Claim.[2]

(4) If the Proceeds of [Welch's] Claim are not enough to pay the full amount due to USC, then USC shall be entitled to receive 100% of the Proceeds of [her] Claim.

(5) [Welch] ... irrevocably authorize[s] and direct[s][her] Attorney (and any future Attorney representing [her] in connection with [her] Claim) to, among other things ... (ii) pay USC from the Proceeds the amount due to USC representing their[sic] Interest in the Proceeds of [her] Claim at the time of distribution of the Proceeds prior to any

---

1. It was not a loan as the Trustee argues. "The word 'loan' implies an advance of money with an absolute promise to repay." *MoneyForLawsuits V LP v. Rowe*, No. 10–11537, 2012 WL 1068171, at *13 (E.D.Mich. Jan. 23, 2012) (citation omitted). Here, liability was not admitted on Welch's WC claim when USC advanced the funds to Welch, and it was unknown whether Welch would recover. As such, there was no *absolute* promise to repay. *Id.* at **13–14. The transaction between Welch and USC constituted a sale. *See In re Tammarine*, 405 B.R. 465, 467 (Bkrtcy. N.D.Ohio April 30, 2009):

a sale ... will not normally entail any absolute obligation to repay. Rather, in a busi-

ness transaction, any obligation to repay the sums advanced will be contingent on the occurrence of an event subsequent such as whether the business earns a profit. Similarly, a sale involves no absolute obligation of repayment, but is instead characterized by an exchange of property or services in exchange for a payment or other valuable consideration.
(Internal citation omitted).

2. This suggests that the interest in the proceeds—having been absolutely assigned—belongs to USC; the re-payment does not come from Welch but from any claims proceeds, controlled by her attorney.

payment to [her] with respect to [her] Claim.

(6) The amount due USC shall be withheld from any money collected as a result of [Welch's] Claim and shall immediately be paid to USC.... [Welch] agree[s] and ... direct[s] that all Proceeds received in connection with [her] Claim, are held IN TRUST for USC until USC has been fully paid its Interest, *[Welch] understand[s] that [she] will not receive any money or payment from the Proceeds of [her] Claim until USC has been paid its Interest in full.* (Emphasis in original)

(7) [Welch] specifically promise[s] not to sell any additional portion of the Proceeds of [her] Claim after the date of this Agreement, unless USC has given [her] prior written permission.

(8) If [Welch] recover[s] nothing from [her] Claim, [she] will owe USC nothing.

(9) If [Welch] want[s] to sell an additional interest, and if USC agrees to purchase an additional Interest, [she] will sign an amended Disclosure Table.[3]

(10) [Welch] ha[s] the right to cancel this agreement without penalty or further obligation at any time prior to midnight of the fifth business day from the date [she] receive[s] funding hereunder from USC [by returning the $5,000.00 in full along with a notice of cancellation].

---

3. In other words, the $5,953.00 interest, once sold, cannot be re-sold or re-assigned by Welch. If Welch desired additional funds, she was potentially able to sell USC an additional interest in another portion of the WC proceeds.

Although there is a clause in the Purchase Agreement that grants a security interest to USC, this was merely to ensure payment to USC of its portion of Welch's anticipated WC proceeds. When the Purchase Agreement was signed, Welch absolutely assigned and relinquished her right to that portion of her anticipated proceeds purchased by USC. At that point, the transfer was complete.[4]

## V. CONCLUSION

Because Welch irrevocably sold a portion of her anticipated WC proceeds two years before her bankruptcy petition was filed, the transfer of her interest did not fall within the 90 day preference period. Therefore, USC's motion for summary judgment is **GRANTED,** and the Trustee's motion for summary judgment is **DENIED.** The transfer cannot be avoided pursuant to 11 U.S.C. § 547(b).

---

4. Therefore, USC's admitted failure to perfect the security interest would have compromised its ability to obtain a lien on the settlement proceeds, had Welch's WC attorney not paid USC the portion of its proceeds as agreed; it has nothing to do with the timing of events related to this preference litigation.