**In re GIBRALTAR RESOURCES, INC. d/b/a et al., Debtor.**

**Carey D. EBERT, Trustee for Gibraltar Resources, Inc., d/b/a et al., Plaintiff,**

**v.**

**BLACKMAX DOWNHOLE TOOLS, INC., Dailey Directional Services, Denmon's H2S Safety Service, Inc., The Dia–Log Company, Gammaloy, Ltd., Specialty Drilling Fluids, Inc., Marie and Kenneth Pfullman, d/b/a T & S Bits and Rental Service, and Varel Manufacturing Company, Defendants.**

Bankruptcy No. 393–37028 RCM–7.
Adv. No. 396–3066.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 17, 1996.

David R. Snodgrass, Gardere & Wynne, Dallas, Texas, for Varel.

Beverly E. Landis, Arlington, Texas, for Trustee.

J. Max Tucker, Winstead Sechrest & Minick, Dallas, Texas, for Trustee Special Counsel.

Thomas G. Gruenert, Houston, Texas, for Dailey.

### AMENDED MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

On November 15, 1995, Carey D. Ebert, Chapter 7 Trustee for the bankruptcy estate of Gibraltar Resources, Inc. ("Debtor") (the "Trustee"), filed a Complaint to Determine, Avoid and Recover Preferences against Dai-

ley Directional Services ("Dailey"), Varel Manufacturing Company ("Varel"), and various other defendants. Dailey and Varel each filed Motions for Summary Judgment. In order to prove a preference, the Trustee must prove each element of § 547(b). Based upon the summary judgment evidence, the Trustee is unable to demonstrate that the pre-petition transfers were made "within 90 days before the date of the filing of the petition" as required under § 547(b)(4)(A). Accordingly, Varel and Dailey's motions for summary judgment are granted and the Trustee is not entitled to recovery under § 550.

From a preference standpoint, the following dates were critical:

1. interpleader commenced on May 27, 1993;
2. the original Agreed Final Judgment determining ownership of the interplead funds was entered on July 9, 1993;
3. ninetieth day before bankruptcy was July 14, 1993;
4. the Amended Final Judgment was entered on July 21, 1993; and
5. the involuntary petition was filed against Gibraltar Resources, Inc., on October 12, 1993.

This Court has jurisdiction to consider this complaint pursuant to 28 U.S.C. § 1334. This matter concerns the proceedings to determine, avoid, and recover preferences and is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(F). Venue in this adversary proceeding was proper in this Court pursuant to 28 U.S.C. § 1409. The motions were heard on February 20, 1996, and were taken under advisement. Pursuant to Bankruptcy Rules 7052 and 7056, the Court makes the following findings of undisputed facts and conclusions of law.

### FINDINGS OF FACT

The material facts are undisputed. Various underwriters at Lloyd's, London, and London Companies ("Underwriters") issued an insurance policy to the Debtor to cover loss incurred at a Gonzales County well during the period from February. 12, 1992 to February 12, 1993. On November 6, 1992,

Underwriters received notice that the Gonzales well experienced a loss. On April 7, 1993, Underwriters adjusted Debtor's claim in the amount of $1,918,817.63.

Prior to paying the claim, Underwriters received correspondence alleging that Debtor had assigned the insurance proceeds to various creditors. Underwriters also received demands that payment be made to the assignees. In substantiation of these allegations, Underwriters obtained a memorandum, written by a Debtor representative and dated April 7, 1993, which listed various creditors that had received assignments of insurance proceeds totaling $2,601,448.44. Dailey was listed as having received an assignment of $131,950.48 and Varel was listed as having received an assignment of $43,333.34.

Upon notification by Underwriters, Debtor disputed the assignment to Dailey and Varel. On May 27, 1993, Underwriters filed an interpleader action in the United States District Court for the Southern District of Texas on the basis of multiple and duplicative claims for the insurance policy proceeds. Underwriter then paid the insurance proceeds of $1,918,817.63 into the Registry of the court to be distributed according to the judgment of the court.

On July 9, 1993, the court entered an Agreed Final Judgment distributing the insurance proceeds to various creditors. The judgment granted Dailey $131,950.48 and Varel $31,033.00. On July 19, 1993, the court amended the judgment. The only substantive change in the Amended Final Judgment was the .265% increase in the amount (from $147,258.57 to $147,649.02) awarded to one of the twenty-nine creditors. On July 21, 1993, the clerk of the court issued Dailey and Varel checks for their respective judgment awards.

On October 12, 1993, an involuntary petition was filed against the Debtor. On November 16, 1993, an order for relief was entered.

## CONCLUSIONS OF LAW

In order to demonstrate that Dailey or Varel received a preference payment, the Trustee must prove all the elements of 11 U.S.C. § 547(b). There is one element at issue in the present summary judgment motions. The issue is whether the transfer was within the 90 day preference period before the Debtor's bankruptcy petition.

### The Trustee Cannot Establish a Voidable Transfer Within the Ninety–Day Preference Period

■ It is contended that the assignment of the insurance proceeds occurred outside the ninety-day preference period. The Agreed Final Judgment was signed by Underwriters and the Debtor, and entered on July 9, 1993. The judgment states "that it resolves all controversies regarding rights to recovery of the funds which have been deposited in the Registry." The judgment goes on to state that "all claims by and among all the defendants regarding the Fund are resolved, and each defendant shall receive the following amounts." The judgment then instructs the Registrar of the court "to immediately prepare individual checks for each of the above defendants, with the exception of [the Debtor]." Gibraltar Resources, Inc., d/b/a Ploeger–Hamon No. 1 Joint Venture was awarded $10 under the judgment and amended judgment, but, per paragraph (3) of both judgments, the court registrar was not to prepare such check for Gibraltar. Further, the following parties received the following amounts under the judgement:

| Name | Amount |
| --- | --- |
| Atlantis Horizontal Services, Inc. | $ 56,642.93 |
| Resources International Group, Inc. | $147,649.02 |
|  | (This was changed to $147,258.57 under the amended judgment) |

The Court previously entered summary judgment for Defendants herein. The Trustee contends, on motion for rehearing, that these two names were listed d/b/a's of the Debtor, but the summary judgment record does not establish when they became d/b/a's of the Debtor. It is true that the Debtor's style in this bankruptcy included such names, or modifications thereof. However, for purposes of the summary judgment motions at issue, it is meaningless as against the assigned rights of these two defendants whether the Debtor did or did not receive any of the interpled funds under the agreed final judgment.

The Debtor was a defendant in the interplead action. The Debtor signed the Agreed Final Judgment; therefore, the Debtor consented to its form and substance. The execution of the Agreed Final Judgment constituted an assignment of whatever rights the Debtor had in the interplead funds of the other defendants. Debtor's bankruptcy case was commenced on October 12, 1993, which is more than ninety days after the assignment under the Agreed Final Judgment entered on July 9, 1993.

The Trustee argues that, for purposes of a preference action, the transfers occurred on July 21, 1993, which is when the District Court Clerk issued the checks to Dailey and Varel. Given this transfer date, the Trustee claims the ninety-day preference period element of § 547(b)(4) is clearly met. In response, it is contended that the Debtor no longer had any rights to the interplead funds at the time of the disbursement because all of the Debtor's rights in the funds were terminated when the Agreed Final Judgment was entered.

The court disagrees with the Trustee. In the present case, whatever claims the Debtor had to the insurance proceeds were extinguished, at the latest, on the entry date of the Agreed Final Judgment. This is the latest date the transfer was perfected. (§ 547(e)(1)(B)). Section 101(54) defines "transfer" as follows:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

The July 9, 1993 entry date of the Agreed Final Judgment is outside the preference period. There is significant case law that might well hold that, for purposes of § 547(e)(1)(B), the transfer occurred when the money was placed in the registry of the Court on May 27, 1993. *See* cases discussing *custodia legis* hereafter.

■ In addition, for purposes of applying the preference period, "a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected." *In re Adventist Living Centers, Inc.*, 174 B.R. 505, 512 (Bankr. N.D.Ill.1994). Under the facts of the present case, an assignment of rights is effective when the assignment by judgment was made. As a result, the Debtor did not make a transfer of an interest in property within the preference period even though the District Court Clerk did not issue the check until July 21, 1993.

■ The Trustee also contends that the date of the Amended Final Judgment of July 19, 1993 is within the preference period and is controlling for determining the date of any transfer in the Debtor's rights in the insurance proceeds. The movants, citing 49 C.J.S. *Judgments* § 263, argue that the Court should follow the general rules that an Amended Final Judgment: 1) relates back to the original judgment and becomes part of it; 2) leaves the original judgment effective and unimpaired except as amended; and 3) does not create or amount to a new judgment.

■ Whether the effect of an amended judgment was to vacate or merely amend is not determined by whether the judgment is rewritten as a whole instead of rewriting only the amended portion of the judgment. *Webster v. Smith*, 226 S.W.2d 250, 252 (Tex. App.—Eastland 1950, no writ). The manner used to effect an amendment to a judgment is immaterial. *Id.* "The determining factor is the nature of the change made." *Id.; Horlock v. Horlock*, 593 S.W.2d 743, 745 (Tex.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Home Indemnity Co. v. Muncy*, 449 S.W.2d 312, 315 (Tex.App.—Tyler 1969, writ ref'd n.r.e.). If the amendment is to correct a judicial error, then "the prior judgment is at least in part set aside and superseded and there is a new and substituted judgment." *Id.* at 253; *Horlock*, 593 S.W.2d at 745; *Muncy*, 449 S.W.2d at 315. If the amendment is merely to correct a clerical error, then there is no new judgment. *Id.* A clerical error includes adding or changing something which was omitted by inadvertence so as to accurately portray the judgment which was rendered. *Id.*

■ When the amended judgment does not provide language to assist in the determi-

nation of the nature of the error, "it will not be presumed that the facts which occasioned such a change were such as to render invalid the judgment under attack. The burden of showing a judgment invalid rests upon the party attacking it." *Webster v. Smith*, 226 S.W.2d at 252.

The Amended Final Judgment is almost identical to the Final Judgment. The first paragraph of the Amended Final Judgment states, "[i]t has come to the attention of this Court that the Agreed Final Judgment ... *must be amended;* therefore, it is ordered *vacated and amended as follows.*" (Emphasis added). The only substantive change is a .265% change (from $147,258.57 to $147,649.02) in an award to Resources International Group, Inc. (*see above*, "Debtor d/b/a" discussion), one of the twenty-nine listed creditors. The language of the Amended Final Judgment is somewhat troublesome because the Court uses both the words "vacate" and "amended." Considering the language of the first paragraph and the single-minor substantial change in the Amended Final Judgment in the present case, it appears that the District Court was correcting a clerical error and not a judicial error. Therefore, the amended judgment relates back to the original judgment. It should be noted that even if the amendment was to correct a judicial error, the prior judgment would only be set aside to the extent the judgment was revised. The amended judgment still provided that the Defendants received the same amount of the interpled funds. As a result, the judgement date which has the same effect as an assignment date, remains July 9, 1993, which is before the preference period began.[1]

The Trustee cites *In re Durant's Rental Center, Inc.*, 116 B.R. 362, 367 (Bankr.Conn.

1990) and *In re Mason*, 69 B.R. 876, 884–85 (Bankr.E.D.Pa.1987), for the proposition that the transfer under (§ 547(e)(1)(B)) does not occur until a physical transfer of the funds. Section 547(e)(1)(B) provides:

> a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

Section 101(36) states:

> "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

Prejudgment, the Debtor never had possession or control of the insurance proceeds interpled into the registry. All property that is placed into the registry of the Court is regarded as *in custodia legis*, and, as such, is not subject to levy and sale by execution or garnishment. *Matter of Braen*, 72 B.R. 56, 60 (Bankr.D.N.J.1987); *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 343 (Tex.1976); *Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 382 (Tex.App.—San Antonio 1992, writ denied).

In *Braen*, the court went on to hold that, since the property at issue was *in custodia legis* and not subject to execution, the trustee's status as a hypothetical lien creditor would not defeat the creditor's interest. 72 B.R. at 60. However, when the court enters a decree of distribution, the property is subject to levy, as to the distributee, under Texas law because the purpose of the *in custodia legis* doctrine is satisfied. *Gonzales v. Daniel*, 854 S.W.2d 253, 256 (Tex.App.—Corpus Christi 1993, no writ).

In the case of *In re Aspen Data Graphics, Inc.*, 109 B.R. 677 (Bankr.E.D.Pa.1990), the court held that the transfer was perfected,

---

1. Two Fifth Circuit cases are instructive. The cases addressed the issue of the effect of an amended judgment on the determination of when a judgment is final from which an appeal could be taken. In *Offshore Production Contractors v. Republic Underwriters*, the court stated that the mere fact that a court "revises a judgment in an immaterial way does not affect the time within which litigants must pursue an appeal." 910 F.2d 224, 229 (5th Cir.1990) *citing Federal Trade Commission v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49,

97 L.Ed. 245 (1952). The court stated the test was whether the amendment "has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." *Id.* In *First Nationwide Bank v. Summer House Joint Venture*, the court held that a revised order reflecting a minor spelling change in a party's name, but not materially altering the original order, did not enlarge the time for filing an appeal. 902 F.2d 1197, 1200 (5th Cir.1990). By analogy to these cases, the result in the present case would be the same.

for transfer purposes (§ 547(e)(1)(B)), when the *debtor* placed funds *in custodia legis* prebankruptcy. The court stated:

> Thus, it appears that the transfer occurred, and was perfected in favor of the defendants, for purposes of § 547(b), when the funds were placed in escrow with the state court. *Accord In re Coco*, 67 B.R. 365, 369 (Bankr.S.N.D.Y.1986) ("cases are uniform in holding that it is the debtor's *deposit* of funds into escrow and not the award of judgment or subsequent release of the funds that is the controlling transfer for preference purposes") (emphasis in original). *See also In re Newcomb*, 744 F.2d 621, 627 (8th Cir.1984); *In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667 (Bankr.S.D.N.Y.1985).

*Id.* at 682–683 (footnote omitted).

Post-judgment, a simple contract creditor could not have acquired a judicial lien in the interpled funds superior to that of Defendants. § 547(e)(1)(B). Even if a simple contract creditor could have intervened, there is no showing that he could have achieved a judicial lien interest superior to any interest of the other parties in the case because, at the very least, those parties had the same opportunity to achieve a judicial lien of the same rank as the simple contract creditor.

However, to ever get to the judicial lien status, the simple contract creditor would have had to intervene in this case postagreed judgment. This means obtaining the right to intervene under FRCP 24 and obtaining an order setting aside the agreed judgment. "Absent extraordinary and unusual circumstances, intervention by a party who did not participate in the litigation giving rise to the judgment should not be permitted." *Meredith v. Schreiner Transport, Inc.*, 814 F.Supp. 1001, 1003 (D.Kan.1993), citing, *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192, 194 (10th Cir.1970).

A simple contract creditor has only the rights arising from breach of a simple contract, *i.e.*, a damage claim. There would be insufficient basis for a court to conclude that a simple contract creditor could assert a

direct interest relating to the interpled registry funds.

### The Claim that the Doctrine of Res Judicata Bars the Trustee's Recovery

It is also contended that the District Court's judgment effectively terminates the Debtor's interest in the insurance proceeds and has the same effect as an assignment to Varel and Dailey. As such, it is argued that the Doctrine of *Res Judicata* bars relitigation of the claim.[2] Defendants' pleadings are broad enough to include consideration of the doctrine of collateral estoppel.

Collateral estoppel refers to issue preclusion which is narrower than *res judicata*. *Bonniwell*, 663 S.W.2d at 818. Collateral estoppel "bars the relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Bonniwell*, 663 S.W.2d at 818. Texas law requires that "[a] party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Id.*

Requirements (1) and (2) are altered somewhat when the previous action resulted in a consent decree. *Kaspar Wire Works, Inc. v. Leco Engineering & Mach.*, 575 F.2d 530, 539 (5th Cir.1978); *Barber v. International Brotherhood of Boilermakers.* 778 F.2d 750, 757 (11th Cir.1985). Consent decrees are treated differently because their very purpose is typically to avoid litigation, therefore, requirements (1) and (2) will generally be missing. *Id.* Courts should "give preclusive effect to issues parties agree to decide by consent decree." *In re Graham*, 973 F.2d 1089, 1097 (3rd Cir.1992). The central inquiry in determining the preclusive effect of a consent judgment is the intention

---

2. In *McDaniel v. Camp (In re Camp)*, 59 F.3d 548, 550 (5th Cir.1995), the court set out the four elements of *res judicata* in Texas. The fourth element is not present in this case, *i.e.*, that the same cause of action is involved in both suits.

of the parties as manifested in the judgment or other evidence. *Balbirer v. Austin,* 790 F.2d 1524, 1527 (11th Cir.1986). "The intent can be inferred from the words of the agreement or from the record." *Kaspar,* 575 F.2d at 540; *Barber,* 778 F.2d at 757.

■ As previously discussed, the Agreed Final Judgment in the present case states that it "resolves all controversies regarding rights to recovery of the funds deposited in the Registry." In addition, the judgment states "all claims by and among all the Defendants regarding the Fund are resolved." The court then goes on to instruct the Registrar of the court to immediately issue checks to each Defendant, with the exception of the Debtor. The language of the judgment clearly indicates that, except as stated therein, the parties to the action intended whatever rights, if any, the Debtor had in the insurance proceeds to be terminated and the judgment to be final. As a result, requirements (1) and (2) are met by the intent of the parties as expressed in the Agreed Final Judgment.

■ In considering requirement (3), the court looks to applicable case law applying the Doctrine of *Res Judicata.*[3] As the Trustee concedes, the general rule is that a trustee has no greater rights than the debtor and stands in the shoes of the debtor. Under the general rule, the Trustee would stand in the shoes of the Debtor and would have no rights in the insurance proceeds. A bankruptcy trustee is bound under *res judicata* by a prior judicial determination of a debtor's rights in property. *Kendall Grove Joint Venture v. Martinez–Esteve,* 59 B.R. 407, 410 (S.D.Fla.1986) *citing Coleman v. Alcock,* 272 F.2d 618, 622 (5th Cir.1959). In *Coleman,* the Fifth Circuit stated that in order for an earlier court judicial determination to have *res judicata* effect on a trustee, the proper-

ty's ownership must be put into issue and the action must have been *in rem* or quasi *in rem,* not *in personam.* 272 F.2d at 622.

■ The Trustee, however, claims that there is an applicable exception to the general rule that the trustee stands in the shoes of the debtor. The exception, according to the Trustee, gives the Trustee "strong-arm" powers to intervene and assert the rights of a "hypothetical lien creditor." In *Coleman,* the Fifth Circuit stated, "[t]he fact that the Trustee did not intervene is of no real moment. If it is a suit involving title to real property, the Trustee is bound whether he intervenes or not." *Id.* It appears that collateral estoppel requirement (3) is met because the court had control of a *res.*

■ Property *in custodia legis* is held in possession of a court on behalf of the court. *Gonzales v. Daniel,* 854 S.W.2d at 256. The court retains control over the held property until it issues orders administering the property. *Id.* at 256–57; *In re Technical Land, Inc.,* 175 B.R. 792, 794 (D.D.C.1994) *citing Hitz v. Jenks,* 185 U.S. 155, 22 S.Ct. 598, 46 L.Ed. 851 (1902).

All the requirements of collateral estoppel have been met in the present case. As a result, the District Court's July 9, 1993 judgment terminated the Debtor's interest in the insurance proceeds. Since the Debtor's interest was terminated prior to the ninety-day preference period, the Trustee is unable to meet § 547(b)(4); therefore, the Trustee is not entitled to recovery under § 550.

This opinion amends and supersedes the prior opinion herein.

### ORDER OVERRULING TRUSTEE'S MOTION FOR RECONSIDERATION AND AMENDMENT OF MEMORANDUM OPINION AND ORDER

After due hearing and consideration, it is

---

**3.** *Res judicata* refers to "claim preclusion because it bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in the prior suit." *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Collateral estoppel refers to issue preclusion which is narrower than *res judicata. Bonniwell,* 663 S.W.2d at 818. Collateral estoppel "bars the relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regard-

less of whether the second suit is based upon the same cause of action." *Bonniwell,* 663 S.W.2d at 818. One requirement of collateral estoppel is that the parties were cast as adversaries in the first action. *Id.* One requirement of *res judicata* is that the parties, or those in privity with them, are identical in both suits. *Id.* Since the two requirements are so similar, and since collateral estoppel is narrower and encompassed in *res judicata,* the court finds applicable *res judicata* case law instructive in the present case.

**ORDERED** that the motion for reconsideration and amendment of memorandum opinion and order of the Chapter 7 Trustee Carey D. Ebert is, in all things, overruled, except to the extent the opinion is amended by opinion signed this date.