In re GIBRALTAR RESOURCES, INC.,
d/b/a Resources International
Group, et al., Debtor.

Carey D. EBERT, Trustee,
Plaintiff–Appellant,

v.

DAILEY DIRECTIONAL SERVICES
and Varel Manufacturing Co.,
Defendants–Appellees.

Civil Action No. 3:96–CV–1754–D.
Bankruptcy No. 393–37028–RCM–7.
Adv. No. 396–3066.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 26, 1996.

J. Maxwell Tucker (argued), of Winstead
Sechrest & Minick P.C., Dallas, TX, and
Beverly E. Landis (argued), Arlington, TX,
for plaintiff-appellant.

Thomas G. Gruenert (argued), Houston,
TX, for defendant-appellee Dailey Directional
Services.

David R. Snodgrass (argued), of Gardere
& Wynne, L.L.P., Dallas, TX, for defendant-
appellee Varel Manufacturing Co.

FITZWATER, District Judge:

The dispositive question presented by this
bankruptcy appeal is whether an agreed
judgment in an interpleader action constitut-
ed a transfer within the meaning of 11 U.S.C.
§ 547(e)(1)(B). Concluding that it did, and
that the transfer occurred prior to the 90–
day preference period, the court affirms the
summary judgment of the bankruptcy court
dismissing the trustee's preference action.

I

Plaintiff-appellant Carey D. Ebert (the "Trustee"), chapter 7 trustee of debtor Gibraltar Resources, Inc., d/b/a Resources International Group, et al. ("Gibraltar"), appeals a summary judgment dismissing the Trustee's preference action against defendants-appellees Dailey Directional Services ("Dailey") and Varel Manufacturing Company ("Varel"). *See In re Gibraltar Resources, Inc.*, 197 B.R. 246 (Bankr.N.D.Tex.1996). The debtor, Gibraltar, obtained insurance from various underwriters at Lloyd's, London, and London Companies ("Lloyd's"), for one of its oil and gas wells. Following a loss on the well, Lloyd's adjusted the claim, agreeing to pay Gibraltar the sum of approximately $1.9 million. Lloyd's received notice that Gibraltar had assigned insurance proceeds to certain creditors, and that the funds were subject to garnishment and demands from third parties. These creditors demanded that Lloyd's pay them directly. In an April 17, 1993 memorandum, a Gibraltar representative listed various creditors who had received assignments of insurance proceeds totaling approximately $2.6 million. The document reflected that Dailey had received an assignment of $131,950.48, and Varel an assignment of $43,333.34. Gibraltar disputed the assignments, including those to Dailey and Varel, prompting Lloyd's to file an interpleader action (the "Interpleader Action") on May 27, 1993 in the United States District Court for the Southern District of Texas (the "Interpleader Court"). Lloyd's paid the insurance proceeds into the court registry.

█ On July 8, 1993 the Interpleader Court signed, and on July 9, 1993 the court clerk entered, an agreed final judgment ("Agreed Judgment") that directed the distribution of the insurance proceeds to various creditors. The judgment granted Dailey all of its claim for $131,950.48; it awarded Varel the sum of $31,033.00 from the assigned amount.[1] On July 21, 1993 the court clerk issued Dailey and Varel checks for their respective portions of the funds distributed from the Interpleader Action.

On October 12, 1993—within 90 days of the July 21, 1993 distribution of proceeds by the court clerk, but in excess of 90 days from the July 9, 1993 entry of the Agreed Judgment—an involuntary bankruptcy petition was filed against Gibraltar. An order of relief was entered on November 16, 1993. The 90-day preference period thus commenced on July 14, 1993.

The Trustee argued below that the 90-day preference period of § 547(b)(4) was met, and the transfers to Dailey and Varel were avoidable, because the relevant transfers occurred on July 21, 1993, the date the court clerk issued to Dailey and Varel checks representing the interpleaded insurance proceeds. The bankruptcy court rejected this contention. Relying on the definition of "transfer" set out in 11 U.S.C. § 101(54), the bankruptcy court held that "whatever claims [Gibraltar] had to the insurance proceeds were extinguished, at the latest, on the entry date of the Agreed Final Judgment," *In re Gibraltar*, 197 B.R. at 250, a date prior to commencement of the preference period. *Id.*[2] The court also concluded that, in calculating the preference period, "a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected." *Id.* (quoting *In re Adventist Living Ctrs., Inc.*, 174 B.R. 505, 512 (Bankr.N.D.Ill.1994)). Therefore, the assignment of the insurance

---

**1.** On July 19, 1993 the Interpleader Court signed an amended judgment ("Amended Judgment"). Although the Amended Judgment did not change the distributions to Dailey and Varel, it did increase by $390.45 (from $147,258.57 to $147,649.02) the award to another creditor, Resources International Group, Inc. This represented a change of .265% from the Agreed Judgment. Although the bankruptcy court addressed the effect of the Amended Judgment in its analysis, *see In re Gibraltar*, 197 B.R. at 250–51, the Trustee does not argue for reversal on the basis that the Amended Judgment—which the Interpleader Court entered during the preference period—controls. This argument has therefore been waived. *See, e.g., Yaquinto v. Greer*, 81 B.R. 870, 876 n. 4 (N.D.Tex.1988) (appellate court will not consider matter not briefed).

**2.** The court suggested, without deciding, that the creditors could properly rely on an earlier date—May 27, 1993, when the insurance proceeds were placed in the court registry—in support of their opposition to the Trustee's preference action. *Id.*

proceeds by the July 9, 1993 Agreed Judgment effected the transfer. *Id.*[3]

The Trustee appeals the summary judgment dismissing her preference action.

## II

■■■ The court need only decide the question whether the July 9, 1993 Agreed Judgment constituted a transfer within the meaning of § 547(e)(1)(B).[4]

Section 547(b) of the Bankruptcy Code provides that, except in limited circumstances, the trustee of a bankruptcy estate "may avoid any transfer of an interest of the debtor in property" that is made "on or within 90 days before the date of the filing of the petition." The question whether a "transfer" has occurred and is complete is a matter of federal law. *Barnhill v. Johnson,* 503 U.S. 393, 397, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992).

■■■ Section 547(e)(1)(B) specifies that a transfer of an interest in property other than real property is perfected or complete for purposes of preference avoidance "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." When a debtor makes an absolute assignment to a creditor, of money that the debtor is entitled to receive from a third party, a transfer is perfected and complete when the assignment is executed rather than when the money is disbursed to the creditor. *See Goldstein v. Madison Nat'l Bank,* 807 F.2d 1070, 1074 (D.C.Cir.1986) (holding that transfer occurred in law when assignment was executed); *In re Adventist Living Ctrs.,* 174 B.R. at 512 (holding that transfer occurs on date that contractual right to payment is assigned, not on date payment is actually made or collected); *In re Anchorage Nautical Tours, Inc.,* 102 B.R. 741, 744 (Bankr. 9th Cir.1989) (holding that upon assignment, assignor's rights were fully extinguished so that if assignor later received proceeds of assigned rights, assignor held them in constructive trust for assignee, and that assignee's rights would be superior even to subsequent judicial lienor); *In re Armando Gerstel, Inc.,* 65 B.R. 602, 605 (S.D.Fla. 1986) (holding that when assignments took place outside preference period, proceeds that debtor received during preference period never became property of debtor's estate, but were held in trust for assignees).[5]

In the present case, the Agreed Judgment constituted an absolute assignment of the insurance proceeds. An assignment is absolute when there is a "manifestation of the assignor's intention to transfer [a right] by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) of Contracts § 317 (1981). The Agreed

---

3. The bankruptcy court rejected the Trustee's reliance on hypothetical judicial lien creditor analysis under § 547(e)(1)(B) to argue that the transfer of the interpleaded funds could not have been perfected so long as the Trustee could have intervened in the Interpleader Action. *Id.* at 251–52. The court also held that the Interpleader Court's July 9, 1993 judgment collaterally estopped Gibraltar from asserting an interest in the insurance proceeds. *Id.* at 252–53.

4. "[T]his court may affirm a correct judgment for reasons not given by the court below or advanced to it." *In re Smith,* 160 B.R. 549, 554 (N.D.Tex.1993) (citing *Cimmaron Oil Co. v. Cameron Consultants, Inc.,* 71 B.R. 1005, 1011 (N.D.Tex.1987)), *aff'd,* 39 F.3d 320 (5th Cir.1994) (table). Accordingly, the court need not address either the bankruptcy court's assumption that a hypothetical lien creditor would not have been permitted to intervene in the Interpleader Action, or that collateral estoppel barred the Trustee's action.

5. At oral argument, the Trustee urged the court to hold that *Barnhill* dictates the date of effective transfer in the present case. In *Barnhill* the Supreme Court held that the transfer of a check occurred on the date the drawee bank honored the check rather than on the date the check was delivered to the payee. 503 U.S. at 400, 112 S.Ct. at 1390–91. A check is distinguishable from an assignment, however, because the drawer on a check retains control over the funds—*i.e.,* the drawer can stop payment on the check—until the check is actually honored by the drawee. *Id.* at 399, 112 S.Ct. at 1390 (holding that it cannot be asserted that a check is an unconditional transfer). Several courts have recognized that the distinction between checks and assignments affects the date on which a transfer is deemed to have occurred. *See, e.g., In re Ramy Seed Co.,* 57 B.R. 425, 429 (Bankr.D.Minn.1988) (holding that because issuance of check does not constitute present assignment, transfer does not take place until check is accepted by drawee); *In re Georgia Steel, Inc.,* 38 B.R. 829, 833 (Bankr.M.D.Ga. 1983) (same).

Judgment provided that it "resolve[d] all controversies regarding rights to recovery of the funds which have been deposited in the Registry of this Court," and that "all claims by and among the Defendants regarding the Fund are resolved, and each Defendant shall receive the following amounts, and all interest accrued thereon, from the Fund[.]" Agreed Judgment at 2. Gibraltar and each of the creditors who was a party to the Interpleader Action signed the Agreed Judgment. Gibraltar intended by entering the Agreed Judgment to extinguish immediately its rights to the majority of the insurance proceeds, and to vest those rights in the specified transferees. Therefore, once Gibraltar executed the document, it was dispossessed of its property interests in the funds. *See In re Anchorage Nautical Tours,* 102 B.R. at 744. Regardless whether the prior alleged assignments to creditors who were parties to the Interpleader Action were valid and enforceable, the Agreed Judgment constituted an absolute and present assignment of Gibraltar's right to receive the portions of the insurance proceeds that were to be paid to Dailey and Varel according to the Agreed Judgment. This assignment was effected on July 9, 1993—outside the 90–day preference period.

\*  \*  \*  \*  \*  \*

The Trustee sought to avoid a transfer that occurred prior to commencement of the 90–day preference period. The bankruptcy court properly entered summary judgment dismissing the preference action. The bankruptcy court's order is therefore

AFFIRMED.