### INTERMARQUE AUTOMOTIVE PRODUCTS, INC., Appellant,

v.

### Stewart FELDMAN and Marla Matz, Appellees.

No. 06–99–00124–CV.

Court of Appeals of Texas, Texarkana.

Argued Feb. 7, 2000.

Decided May 2, 2000.

Lynne Liberato, Kent G. Rutter, Haynes & Boone, LLP, Houston, Marvin Isgur, Steven M. Lowenstein, Kirkendall & Isgur, LLP, Houston, for appellant.

David J. Sacks, Kristi L. Hamilton, Sacks & Associates, Houston, Larry D. Thompson, Diane M. Guariglia, Lorance & Thompson, PC, Randall L. Brim, Houston, R. Scott Wolfrom, Law Offices of Stewart A. Feldman & Associates, LLP, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

This is an appeal from the dismissal of a plea in intervention. The underlying lawsuit was initially brought by Niel Morgan against Stewart Feldman and his wife, Marla Matz, for domestication and collection of a federal judgment. In an attempt to collect Morgan's judgment, the trial court imposed a receivership over Feldman's interest in another lawsuit in which Feldman was making a claim on an insurance policy. Intermarque Automotive Products, Inc. then filed a plea in intervention in the collection lawsuit, asserting an equitable interest in this receivership asset on the grounds that (1) Intermarque was the owner of the insurance policy at issue, and (2) Feldman would be unjustly enriched if he was allowed to retain the insurance proceeds. The trial court struck Intermarque's plea in intervention and dissolved the receivership after ensuring the satisfaction of Morgan's judgment. On appeal, Intermarque contends that the trial court abused its discretion in striking its plea in intervention. After reviewing the record, we affirm the trial court's dismissal of Intermarque's plea in intervention.

The record reveals that Stewart Feldman, Niel Morgan, and Roy Bennion formed Intermarque, a Texas corporation, in 1989. Thereafter, the three men served together as the sole officers, directors, and shareholders of the corporation. In early 1992, Intermarque terminated Feldman's employment and filed a lawsuit against him due to his alleged wrongful conduct against Intermarque (the "Intermarque–

Feldman lawsuit"). Feldman then filed counterclaims against Intermarque, and brought Morgan and Bennion into the lawsuit as third-party defendants.

At this time, Intermarque was the owner of a commercial general liability insurance policy issued by Commercial Union Lloyds of Texas ("Commercial Union").[1] The policy listed Intermarque as the named insured, and Intermarque's officers, directors, and shareholders could qualify as additional insureds by definition. Morgan, Bennion, and Feldman all requested Commercial Union to provide their defense in the Intermarque–Feldman lawsuit. Commercial Union denied Feldman's claim, while agreeing to provide a defense for Morgan and Bennion under a reservation of rights. In addition, Commercial Union entered into a settlement agreement with Morgan, Bennion, and Intermarque. Pursuant to the agreement, Commercial Union paid $250,000.00 in exchange for the release of most, if not all, of Morgan's and Bennion's rights under the policy, and some of Intermarque's rights under the policy. Intermarque retained all its rights to indemnification, and Feldman's rights under the policy were unaffected.

In June 1993, the trial court entered a final judgment in the Intermarque–Feldman lawsuit.[2] The judgment contained the trial court's finding that Feldman failed to comply with Article 2.02–1(B)(1), (2), & (C) of the Texas Revised Civil Statutes (the Business Corporation Act).[3] This equated to a finding that Feldman did not conduct himself in good faith, did not reasonably believe his conduct was in Intermarque's best interest, and improperly received a personal benefit from Intermarque or was otherwise liable to Intermarque for his wrongful conduct.[4] Based on this finding, Feldman was denied indemnification from Intermarque.[5]

In December 1993, Feldman filed suit against Commercial Union (the "Commercial Union lawsuit") for its failure to provide him a defense in the Intermarque–Feldman lawsuit. Feldman asserted claims against Commercial Union for reimbursement of defense costs, breach of contract, wrongful denial of coverage, and other violations of the Texas Insurance Code. The Commercial Union lawsuit remained in dispute for the next five and one-half years.

Meanwhile, in November 1998, Morgan filed the underlying lawsuit against Feldman and his wife for the collection of a

1. Intermarque was also the owner of a commercial umbrella policy. Only the commercial general liability policy is at issue in this suit.

2. As between Feldman and Intermarque only, Feldman obtained a net judgment of $250,000.00. Feldman obtained a $300,000.00 judgment against Intermarque for payment of services rendered, and Intermarque obtained a $50,000.00 judgment against Feldman for attorney's fees.

3. In a motion to modify our opinion, Feldman contends that these findings were deleted by order of the bankruptcy court. However, Feldman does not direct us to any such bankruptcy court order in the record. Tex.R.App. P. 34.5(c) authorizes appellate courts to supplement the record; however, it does not allow the creation of a new trial court record. See *Graham v. Pazos De La Torre*, 821 S.W.2d 162, 165 (Tex.App.-Corpus Christi 1991, writ

denied); *Gerdes v. Marion State Bank*, 774 S.W.2d 63, 65 (Tex.App.-San Antonio 1989, writ denied). The bankruptcy court's order was not admitted as evidence when the trial court made its ruling. To allow supplementation at this late date would create a new trial court record.

4. *See* Tex.Rev.Civ. Stat. Ann. art. 2.02–1(B),(C) (Vernon Supp.2000).

5. This finding was made in determining whether Feldman was eligible for indemnification from Intermarque under the Texas Business Corporation Act. When such a finding is made, a corporation generally has no power to indemnify a director or officer. *See* Tex.Rev.Civ. Stat. Ann. art. 2.02–1(B)(1),(2), & (C). However, a corporation may maintain insurance that indemnifies a director or officer even though the corporation itself has no power to indemnify him. *See* Tex.Rev.Civ. Stat. Ann. art. 2.02–1(R) (Vernon Supp.2000).

**548** 

$253,700.00 sanctions judgment arising out of two bad-faith bankruptcy filings and repeated violations of a permanent injunction (the "collection lawsuit"). In an attempt to collect the sanctions judgment, Morgan requested that the trial court impose a receivership over Feldman's interest in the Commercial Union lawsuit. In support of this request, Morgan presented evidence that Feldman had previously structured transactions with the intent to remove his assets from the reach of creditors. In January 1999, the trial court imposed the requested receivership and ordered Feldman's interest in the Commercial Union lawsuit to be set for sale. One day before the scheduled receiver's sale, Feldman paid Morgan's judgment in full. But, because Feldman failed to pay the receiver's fees and Morgan's expenses as ordered, the trial court maintained the receivership.[6]

In June 1999, Feldman obtained a settlement in the Commercial Union lawsuit for an amount that allegedly exceeded the expenses he incurred in defending the Intermarque–Feldman lawsuit.[7] The settlement proceeds automatically became subject to the receivership that had been imposed in the collection lawsuit.

On June 21, 1999, after learning of the settlement, Intermarque filed a plea in intervention in the collection lawsuit. Intermarque asserted an equitable interest in a portion of the settlement proceeds on the grounds that Intermarque was the owner of the Commercial Union insurance policy at issue and Feldman would be unjustly enriched if he was allowed to retain the proceeds. Intermarque pointed out that the trial court· in the Intermarque–Feldman lawsuit found that Feldman had committed wrongdoing against Intermarque, and the settlement proceeds were the product of Commercial Union's failure to provide a defense *when Feldman was sued for this wrongdoing.* As such, Intermarque argued that the settlement proceeds were ultimately the product of Feldman's own wrongdoing. Intermarque therefore claimed that a constructive trust should be imposed in its favor over the proceeds that exceeded Feldman's actual defense costs, so as to prevent Feldman from profiting from his own wrongdoing.

On June 22, 1999, Feldman paid the receiver's fees and Morgan's expenses as ordered by the trial court. Feldman thereafter· filed a motion to strike Intermarque's plea in intervention based on various defenses.[8] After a hearing on the matter, the trial court struck Intermarque's plea in intervention, dissolved the receivership, and entered final judgment.

Intermarque now appeals the trial court's decision and contends that the trial court abused its discretion in striking the plea in intervention.

 The Texas Rules of Civil Procedure provide that "[a]ny party may intervene

---

6. At some point, Feldman's former attorneys *intervened in the collection lawsuit.* It is unclear from the record whether the attorneys intervened as judgment creditors of Feldman or merely as parties with a justiciable interest in the res of the receivership.

7. The settlement agreement is not in the record. However, in its plea in intervention Intermarque alleged that the settlement amount exceeded Feldman's expenses, and Feldman did not deny this allegation. In determining whether an intervention is appropriate, it is proper for the trial court to rely on the *allegations* of fact in the plea in intervention in conjunction with the *allegations* of fact in the motion to strike. *Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d

494, 497 (Tex.App.-San Antonio 1991, writ denied); *McCord v. Watts,* 777 S.W.2d 809, 812 (Tex.App.-Austin 1989, no writ).

8. The defenses asserted in the motion to strike include the following: (1) Intermarque could not have brought this receivership proceeding in its own name because it is not a judgment creditor of Feldman and his wife; (2) Intermarque has no standing to intervene because it does not own the insurance policy in question; (3) Intermarque is not entitled to relief under the Texas Business Corporation Act; (4) Intermarque is judicially estopped because it failed to list the insurance policy as an asset of its bankruptcy estate; and (5) Intermarque's claim is barred by the statute of limitations.

... subject to being stricken out by the court for sufficient cause on the motion of any party." Tex.R. Civ. P. 60. Thus, an intervenor is not required to secure the trial court's permission to intervene; but instead, any party who opposes the intervention has the burden to challenge it by a motion to strike. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990).

■ Once the motion to strike has been filed, the burden then shifts to the intervenor to show a justiciable interest in the lawsuit. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982). The interest asserted by the intervenor may be legal or equitable in nature, *id.*; but it must be "greater than a mere contingent or remote interest." *Rogers v. Searle*, 533 S.W.2d 440, 442 (Tex.App.-Corpus Christi 1976, no writ), *citing Beall v. Helm*, 50 S.W.2d 460 (Tex.Civ.App.-Fort Worth 1932, writ dism'd). A party has a justiciable interest in a lawsuit, and thus a right to intervene, when his interests will be affected by the litigation. *See Miami Indep. Sch. Dist. v. Moses*, 989 S.W.2d 871, 879 (Tex.App.-Austin 1999, pet. denied); *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 234–35 (Tex.App.-Texarkana 1998, no pet.). If a party cannot show a justiciable interest in the lawsuit, the trial court has sufficient cause to strike his plea in intervention. *See Beutel v. Dallas County Flood Control Dist.*, *No. 1*, 916 S.W.2d 685 (Tex.App.-Waco 1996, writ denied); *Wilson v. Coun-*

*ty of Calhoun*, 489 S.W.2d 393 (Tex.Civ. App.-Corpus Christi 1972, writ ref'd n.r.e.).

■ Furthermore, even if a party has a justiciable interest, and thus a right to intervene in a lawsuit, the trial court will still have broad discretion in determining whether his plea in intervention should be struck. *Rogers*, 533 S.W.2d at 442; *Inter–Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex.Civ.App.-Houston 1966, writ ref'd n.r.e.). The trial court's discretion, however, is not unbridled. *Apparel Contractors, Inc. v. Vantage Properties, Inc.*, 620 S.W.2d 666, 668 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.); *Inter–Continental Corp.*, 411 S.W.2d at 589. The Texas Supreme Court has held that it is an abuse of discretion to strike a plea in intervention if (1) the intervenor could have brought the same action, or any part thereof, in his own name, or if the action had been brought against him, he would be able to defeat recovery, or some part thereof, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Guaranty Fed. Sav. Bank*, 793 S.W.2d at 657.[9]

■ Applying the law to the case at hand, we must first determine whether Intermarque had a right to intervene based on a justiciable interest in the collection lawsuit. If Intermarque had a right to intervene, we must then determine whether it was an abuse of discretion to

---

9. Although Intermarque acknowledges that the *Guaranty* abuse of discretion standard discussed herein applies to the traditional plaintiff-defendant case, it argues that this standard does not apply to the situation where a plea in intervention asserts a claim against the res of a receivership. Intermarque contends that a litigant *must* file a plea in intervention to assert an interest in the res of a receivership so as to preserve his interest against a purchaser at a receiver's sale. Intermarque cites persuasive authority in making this argument. *See, e.g., Houston & T.C.R. Co. v. Crawford*, 88 Tex. 277, 31 S.W. 176 (1895) (where a railroad in the hands of a receiver was ordered to be sold, subject to the

payment of only those claims that are established within a specified time, the purchaser at the receiver's sale will not be liable to one who fails to have his claim so ascertained); *Apparel Contractors, Inc. v. Vantage Properties, Inc.*, 620 S.W.2d 666 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.) (where judgment creditor obtained writ of garnishment on certain property, it was an abuse of discretion to strike plea in intervention alleging security interest in that same property, even though intervenor could not have brought action in its own name). However, due to the manner in which this case is resolved, we need not reach this issue.

strike Intermarque's plea in intervention. On the other hand, if Intermarque had no right to intervene, then the trial court had sufficient cause to strike its plea in intervention and we must affirm.

■ In its plea in intervention, Intermarque alleged that it had an interest in the settlement proceeds from the Commercial Union lawsuit based on the grounds that (1) Intermarque was the owner of the Commercial Union insurance policy at issue,[10] and (2) Feldman would be unjustly enriched if allowed to retain the insurance proceeds.

However, the owner of an insurance policy does not necessarily have an interest in the proceeds. Two bankruptcy cases[11] out of the Fifth Circuit Court of Appeals provide helpful guidelines for determining who has an interest in the proceeds of an insurance policy that is owned by the corporation and that insures both the corporation and its directors and officers. *See In re Vitek, Inc.*, 51 F.3d 530 (5th Cir.1995); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987). The critical issue is whether payment of the proceeds to the directors and officers would increase the corporation's exposure.

For example, in *Louisiana World Exposition*, the court held that the corporate owner of a directors' and officers' insurance policy did not have an interest in the liability proceeds payable to its directors and officers. *Louisiana World Exposition, Inc.*, 832 F.2d 1391. The policy at issue in that case provided coverage for the liability of the directors and officers, and also separately provided coverage for the legal obligation of the corporation to indemnify the directors and officers.[12] *Id.* at 1398. There was a single policy limit applicable to both the indemnification and the liability protection, so that any payment of liability proceeds reduced the available indemnification coverage. *Id.* Yet, any payment under the liability coverage also reduced the amount of potential indemnification claims for which the corporation could be liable, so that the corporation's exposure was reduced to the same extent the policy limits were reduced. *Id.* at 1400. Thus, there was no potential for increasing the corporation's exposure by payment of liability proceeds. For this reason, the court determined that the corporate policy owner had no interest in the liability proceeds.

On the other hand, in *Vitek* the court stated that the corporate owner of commercial general liability policies owned the liability proceeds of those policies, "irrespective of whether those policies also provide liability coverage for the ... directors and officers." *Vitek*, 51 F.3d at 534. This is because the policy in *Vitek* had one policy limit that provided liability coverage for both the corporation and its directors

---

10. Feldman contends that Intermarque is not the owner of the policy because Commercial Union bought back the policy pursuant to the settlement agreement. However, the settlement agreement merely purports to release certain claims; it does not purport to assign *ownership* of the policy. Nowhere in the settlement agreement do the parties mention assignment of ownership. Contractual language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). Therefore, we conclude that Intermarque has alleged sufficient facts to show that it was the owner of the policy at the time it filed its plea in intervention.

11. Although this case does not involve a bankruptcy, the reasoning used in bankruptcy cases is applicable to this case because the bankruptcy estate "stands in the shoes" of the debtor, and the estate's rights are determined under state law. *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir.1996); *In re Gibraltar Resources, Inc.*, 197 B.R. 246 (Bankr.N.D.Tex. 1996). The issue of who owns the proceeds of an insurance policy arises more frequently in the context of bankruptcy, because in bankruptcy the total claims made against an insurance policy often exceed the policy limits.

12. Texas and other states require a corporation to indemnify its directors and officers in certain circumstances. *See* Tex.Rev.Civ. Stat. Ann. art. 2.02–1 (Vernon Supp.2000).

and officers. *Id.* As such, any liability proceeds paid to the directors and officers reduced the total liability coverage available to the corporation. The corporation's exposure was increased by any payment of liability proceeds-thus, the corporation had an interest in all the proceeds.

In the present case, the insurance proceeds [13] in question are the product of a claim for defense costs, breach of contract, wrongful failure to defend, and other Insurance Code violations. The payment of these proceeds could not have diminished the policy limits so as to increase Intermarque's potential exposure. Based on these facts, we conclude that Intermarque's ownership of the policy did not give Intermarque a justiciable interest in the settlement proceeds paid to Feldman.[14]

▮▮▮ Further, the fact that Feldman was unjustly enriched through his own wrongdoing does not by itself give Intermarque a justiciable interest in the settlement proceeds. Generally, a cause of ac-

tion for unjust enrichment will only be available if the defendant unjustly profited *at the plaintiff's expense. See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 891 (Tex.1998) (a royalty owner has a cause of action against its lessee based on unjust enrichment only when the lessee profited at the royalty owner's expense); RESTATEMENT OF RESTITUTION § 160 cmt. d (1937). In the present case, there is no evidence that Feldman received the settlement proceeds at the expense of Intermarque. In fact, the evidence is to the contrary. Based on the nature of Feldman's claims, Commercial Union had no authority to make a settlement agreement with Feldman that would harm Intermarque. Feldman's claims were based on damages that were personal to him, and settlement of those claims could not possibly have prejudiced any claims Intermarque may have had against Commercial Union.[15] Moreover, as we previously discussed, the settlement of Feldman's claims could not have impaired Intermarque's interest in the in-

13. Feldman argues that his alleged profit was not in the nature of insurance "proceeds," because the profit arose from an "extra-contractual claim" that was over and above a claim for breach of contract. However, the analysis we use for determining Intermarque's interest in Feldman's profit applies regardless of what name is given to the money. The issue is whether payment of the money to Feldman increased Intermarque's exposure.

14. In its supplemental brief, Intermarque uses these two Fifth Circuit cases to get the opposite result. Specifically, Intermarque contends that it owns the proceeds of the policy because, as in *Vitek,* the policy involved in this case is a commercial general liability policy providing liability coverage to both the corporation and its directors and officers. We would agree with Intermarque had this case arisen in bankruptcy court *before* the proceeds had been paid to the director/officer, as was the situation in *Vitek.*

Under the terms of the standard commercial general liability policy, the duty to defend terminates once the liability coverage limits are exhausted. Therefore, once the maximum amount of liability proceeds has been paid, the insureds have no right to proceeds for defense costs. However, this rule does not

work in reverse-the payment of proceeds for defense costs does not affect the insured's right to liability proceeds.

This distinction is crucial because, in bankruptcy cases, claims for defense costs are pending simultaneously with claims for liability coverage. Thus, because the payment of liability proceeds could immediately terminate any right to proceeds for defense costs, the right to defense proceeds cannot be severed from the right to liability proceeds. For this reason, in bankruptcy cases the corporate policy owner is the owner of all the proceeds.

In the present case, however, the defense-related proceeds have already been paid, so the ownership of these proceeds is not intertwined with the ownership of the liability proceeds. The payment of defense-related proceeds cannot deplete the available liability proceeds. Therefore, once defense proceeds are paid to a director, the corporate owner will generally have no interest in those proceeds.

15. Although Intermarque may have been able to make some of the same type of claims against Commercial Union that Feldman made, Intermarque's claims would be based on its own damages and would not be affected by the settlement of Feldman's personal claims.

surance policy itself. Thus, there is nothing in the record to indicate that Feldman could have profited from his own wrongdoing at the expense of Intermarque.[16]

■ We acknowledge that there are some exceptional cases where a constructive trust is imposed in favor of the plaintiff even though the defendant's enrichment was *not* at the expense of the plaintiff. *See Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509 (1942). These cases involve the situation where a person in a fiduciary relationship "acquires property, and the *acquisition or retention of the property is in violation of his duty as fiduciary, . . . .* " RESTATEMENT OF RESTITUTION § 190 (1937) (emphasis added). *See generally Kinzbach Tool Co.*, 160 S.W.2d at 509; RESTATEMENT OF RESTITUTION Ch. 12 (1937). For example, where a *corporate officer purchases profitable property for his corporation but subsequently receives a commission from the seller, the officer holds the commission in constructive trust for the corporation even though the officer's conduct did not harm the corporation.* RESTATEMENT OF RESTITUTION § 197, cmt. c (1937). Without such a remedy, a corporate officer may be encouraged to purchase property on the corporation's behalf, in order to receive a commission for himself. This would be improper because a fiduciary, such as a corporate officer, has a duty to act solely for the benefit of the corporation and not for his own personal benefit. Therefore, *a constructive trust is imposed in these exceptional cases for the purpose of preventing a conflict of interest in the mind of the fiduciary by removing any incentive for the fiduciary to breach his duty of loyalty and act in his own best interest.* *See* RESTATEMENT OF RESTITUTION § 197, cmt. c.

The present case is not one of the aforementioned exceptional cases. A constructive trust is imposed without a showing that the defendant's unjust enrichment was at the plaintiff's expense only where a person in a fiduciary relationship "acquires property, and the *acquisition or retention of the property is in violation of his duty as fiduciary, . . . .* " RESTATEMENT OF RESTITUTION § 190 (emphasis added). *See generally* RESTATEMENT OF RESTITUTION Ch. 12. There is no evidence that Feldman's acquisition or retention of the insurance proceeds was in violation of a fiduciary duty. Intermarque points out that, but for Feldman's wrongdoing, he would not have received the proceeds. This is true and perhaps regrettable, but it is immaterial to the issue at hand. To impose a constructive trust under this exception, it must have been a violation of Feldman's fiduciary duty to acquire or retain the proceeds. The record reflects that Feldman *acquired* the proceeds through insurance coverage that Intermarque itself voluntarily provided for him. And, there is no evidence that it was a breach of Feldman's fiduciary duty to *retain* the proceeds as payment for the insurance company's failure to defend. Thus, in a strict application of this exception, it cannot be said that Feldman *acquired or retained the proceeds in violation of his fiduciary duty.*

Moreover, the reasoning behind this limited exception does not support expanding the exception to include the present case. As previously mentioned, a constructive trust is imposed in these exceptional cases for the purpose of preventing a conflict of interest in the mind of a fiduciary by removing any incentive for the fiduciary to breach his duty of loyalty and act in his own best interest. *See* RESTATEMENT OF RESTITUTION § 197, cmt. c. Yet, in the present case, placing a constructive trust over the insurance proceeds likely would not have removed Feldman's incentive to

---

**16.** Intermarque argues that discovery of the settlement agreement is needed to determine whether Commercial Union settled Feldman's claims at the expense of Intermarque. However, as the named insured, Intermarque did not need discovery to determine if its rights and interests under the insurance policy had been compromised.

breach his fiduciary duty. It is unlikely that the alleged profit from the insurance proceeds provided Feldman with an incentive to act wrongfully, because the alleged profit was not the necessary result of Feldman's conduct. Indeed, the alleged profit would not have arisen if not for the subsequent wrongful conduct of an independent third party, the insurance company, in failing to provide a defense for Feldman. Considering the circumstances, it would be unreasonable to believe that the possibility of receiving the alleged profit provided Feldman with an improper incentive to stray from his duty of loyalty. We therefore conclude that the present case does not fit within the aforementioned exception, and as such, a constructive trust could not have been imposed without a showing that Feldman's enrichment was at Intermarque's expense.[17]

 Furthermore, even if this case did fit within the exception, Intermarque could not impose a constructive trust over the insurance proceeds in question. Restitutionary remedies, such as constructive trusts, are not available to "mere volunteers." *See* Douglas Laycock, Modern American Remedies 525 (2d ed.1994). It has long been the rule that one cannot voluntarily provide goods and services which one has no duty to provide, and then demand payment as restitution. *See, e.g.,* 64 Tex. Jur. 3d *Restitution* § 44 (1989). Likewise, courts will generally not impose a constructive trust over property in favor of a beneficiary where the fiduciary acquired the property with the consent of his beneficiary and the transaction was fair and reasonable.[18] Restatement of Restitution § 191; *see also Burrow v. Arce,* 997 S.W.2d 229, 239 (Tex.1999) (the supreme court stated that a fiduciary must account for any benefit he acquires in violation of his duty, if he acquired the benefit "without a full disclosure"). Thus, although a constructive trust may ordinarily be imposed where a fiduciary acquires property from a third person for his own personal benefit, this is not so if the beneficiary consents to the fiduciary's acquisition of the property. Restatement of Restitution § 191, cmt. i (1937).

The supreme court's reasoning in *Burrow* does not provide any additional support for applying the exception to the present case. Admittedly, the exception applies to fiduciary relationships, and Intermarque and Feldman were in a fiduciary relationship. However, as previously mentioned, Feldman did not *take the alleged profit in violation of his fiduciary duty to Intermarque.* Moreover, imposing a constructive trust over the alleged profit in the present case would not have removed any incentive for Feldman to breach his fiduciary duty. As such, we find no basis for imposing a constructive trust based on *Burrow.*

17. Intermarque contends that based on *Burrow v. Arce,* the present case fits within the aforementioned exception, and therefore, a constructive trust can be imposed without a showing that Feldman's enrichment was at Intermarque's expense. In *Burrow,* the Texas Supreme Court addressed the issue of whether an attorney can be required to forfeit his fee for breach of a fiduciary duty when his client suffered no actual damages due to the breach. *Burrow v. Arce,* 997 S.W.2d 229 (Tex. 1999). After indicating that the forfeiture of attorney's fees is an equitable remedy similar to a constructive trust, the court restated the law that "if [a] fiduciary *takes any gift, gratuity, or benefit in violation of his duty,* ... without a full disclosure, it is a betrayal of his trust ... and he must account to his principal for all he has received." *Id.* at 239, *citing Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942). The supreme court then went on to state that the central purpose of this rule is to protect relationships of trust by discouraging an agent's disloyalty. *Id.* at 238. The court explained that this remedy "removes any incentive for an agent to stray from his duty of loyalty based on the possibility that the principal will be unharmed...." *Id.*

18. Consent may not preclude the enforcement of a constructive trust if (1) the beneficiary was under an incapacity when he gave his consent, or (2) the beneficiary did not know his rights or the material facts which the fiduciary did know, and the fiduciary did not reasonably believe that the beneficiary knew his rights or the material facts, and the beneficiary had not manifested that he did not care to know them, or (3) the beneficiary's consent was induced by improper conduct of the fiduciary, or (4) the transaction was not fair and reasonable. Restatement of Restitution § 191(2) (1937).

In the case at hand, Intermarque effectively consented to Feldman's acquisition of the insurance proceeds, because Intermarque furnished Feldman with the insurance that provided him coverage even when he breached a fiduciary duty. The trial court in the Intermarque–Feldman lawsuit found that based on Feldman's wrongdoing, Intermarque had no duty to directly indemnify Feldman for defense costs. However, despite having no duty to do so, Intermarque furnished insurance for Feldman that gave him the right to defense costs, even though he committed the complained-of wrongdoing.[19] As such, Intermarque acted as a volunteer, providing Feldman with a benefit which it had no duty to provide. If Intermarque had not provided Feldman with this benefit, Feldman could not have received the alleged profit. Intermarque cannot now complain that Feldman profited from his own wrongdoing, when it was Intermarque that provided Feldman with the right to do so.

Therefore, we conclude that Intermarque's plea in intervention was not sufficient to allege a justiciable interest in the insurance proceeds in question, because Intermarque had no right to impose a constructive trust over the proceeds. Intermarque did not have the right to intervene in the collection lawsuit, and as such, the trial court had sufficient cause to strike Intermarque's plea in intervention on Feldman's request. Accordingly, we affirm the trial court's dismissal of Intermarque's plea in intervention.

---

19. The Business Corporation Act states that a corporation, such as Intermarque, has no power and thus no duty to indemnify an officer or director for defense costs, where the officer or director breached a fiduciary duty, as Feldman did. *See* TEX.REV.CIV. STAT. ANN. art. 2.02–1(B)(1),(2), & (C). Yet, the Act further provides that, although there is no duty to do so, a corporation is entitled to furnish insurance that indemnifies its officers and directors in such situations where the corporation would be prohibited from indemnifying them directly. *See* TEX.REV.CIV. STAT. ANN. art. 2.02–1(R). Providing insurance in such situations is supported by public policy, and thus we conclude that it is fair and reasonable for a corporation to do so.